In re CENTRAL STATES POWER & LIGHT CORPORATION.

Civ. A. No. 354.

District Court, D. Delaware.

Oct. 30, 1944.

Richard Jones (of Simpson, Thacher & Bartlett), of New York City, for Central States Power & Light Corporation.

Arthur A. Gammell (of Milbank, Tweed & Hope), of New York City, and Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., for Chase Nat. Bank as corporate trustee and Carl E. Buckley, as successor individual trustee under First Mortgage and Indenture of Trust dated January 1, 1928, of Central States Power & Light Corporation.

Roger Foster, Maurice C. Kaplan, and Arthur Goldman, all of Philadelphia, Pa., for Securities and Exchange Commission.

LEAHY, District Judge.

### Findings of Fact.

1. Central States Power & Light Corporation (herein referred to as "Central States") is a Delaware corporation and has filed a notification of registration with the Securities and Exchange Commission (herein referred to as the "Commission") pursuant to Section 5(a) of the Public Utility Holding Company Act of 1935 (herein referred to as the "Act"), 15 U.S.C.A. § 79e(a).

2. Central States is a subsidiary company of Central States Utilities Corporation (herein referred to as "Central Utilities"), which is in turn a subsidiary company of Ogden Corporation (herein referred to as "Ogden"); both Central Utilities and Ogden are Delaware corporations, and both are registered holding companies under Section 5(a) of the Act.

3. As of April 30, 1944 Central States had outstanding $925,800 unpaid principal amount of First Mortgage and First Lien Gold Bonds, 5½% Series, due 1953 (herein referred to as "5½% Bonds"); $5,940,000 5% Debentures, due January 1, 1945; 80,000 shares $7 cumulative preferred stock of no par value; and 40,600 shares of common stock of no par value.

4. The Indenture securing Central States' 5½% Bonds provides, in Article 3, Section 3.09 thereof, that such bonds may be redeemed at the option of Central States.

5. Article 7 of the Indenture securing Central States' 5% Debentures provides, in part, as follows: "Section 1. Nothing in this Indenture shall prevent the consolidation of the Company * * * with any other corporation, or the merger of any other corporation into the Company * *, or the merger of the Company * * * into any other corporation, or the sale by the Company or by any of its subsidiary companies of its property as an entirety or substantially as an entirety; provided that as a condition of any such consolidation or merger of the Company with or into any other corporation, or any such sale * * *, the corporation formed by such consolidation or into which the Company shall be merged or to which such property of the Company shall be sold shall assume the due and punctual payment of the principal of and interest on, the debentures and the performance of the covenants of this Indenture."

6. On May 20, 1943, the Commission entered an order (a) directing, pursuant to Section 11(b) of the Act, 15 U.S.C.A. § 79k(b), inter alia, that Central States take such steps as may be necessary to recapitalize so as to distribute voting power fairly and equitably among its security holders, provided, however, that such recapitalization need not be effected if the company is liquidated and dissolved, and (b) approving, pursuant to Section 11(e) of the Act, inter alia, a plan providing that Central States would be liquidated and dissolved. No petition for the review of the said order under Section 24(a) of the Act, 15 U.S.C.A. § 79x(a), was filed, and the time within which such a petition might be filed has expired.

7. On December 14, 1943, the Commission filed an application herein requesting this Court to enforce and carry out the terms and provisions of a plan filed by Central States with the Commission pursuant to Section 11(e) of the Act, which plan had been approved by the Commission; said plan provided for (a) the use of certain funds on deposit with the corporate trustee under the Indenture securing Central States' 5½% Bonds to make pro rata payments on said Bonds, and (b) the extension of the maturity date of Central States' 5% Debentures from January 1, 1944 to January 1, 1945.

8. On January 6, 1944, after a hearing on appropriate notice, this Court entered an order approving the said plan as fair and equitable and as appropriate to effectuate the provisions of Section 11(b) and directing its enforcement. Said order provided, inter alia, that "* * * this Court, for the purpose of carrying out the * * * proposals included in the plan,

and pending further order of the Court, hereby takes and retains exclusive jurisdiction of Central States and the assets thereof, wherever located."

9. On July 13, 1944, Central States, joined by Central Utilities and Ogden, filed with the Commission a separable plan (herein referred to as the "Plan") under Section 11(e) of the Act; said Plan provides for (a) the sale, upon the terms and conditions therein set forth, of Central States' remaining utility assets, known as its "Iowa-Minnesota properties," to Interstate Power Company, an associate company in the Ogden holding company system, for a base consideration of $2,750,000, and (b) the use of a portion of such proceeds to discharge all of Central States' then outstanding 5½% Bonds by the payment to the holders thereof of an amount equal to the unpaid principal amount of such Bonds and accrued interest thereon up to the date of such payment, but without payment of any premium on such Bonds.

10. After due notice, the Commission held hearings in respect of the said Plan, and in Findings, Opinion and Order of the Commission dated October 13, 1944, approved the Plan.[1] The Commission found that the Plan was necessary to effectuate the provisions of Section 11(b) of the Act and was fair and equitable to the persons affected thereby.

11. The Plan, including the terms and provisions thereof relating to the sale of Central States' properties and the retirement of Central States' aforesaid 5½% Bonds, is appropriate to effectuate the provisions of Section 11(b) of the Act.

12. Payment of the unpaid principal amount of Central States' 5½% Bonds plus accrued interest thereon, in accordance with the Plan, is the fair equivalent of the rights of the holders of such bonds. The proposal in the Plan for the retirement of the 5½% Bonds of Central States is not at the option of Central States but results from an effort to comply with Section 11(b) of the Act.

13. In accordance with Section 11(e) of the Act, Central States requested the Commission to file an application with this Court to enforce and carry out the terms and provisions of the Plan relating to the sale of its remaining utility assets and the use of a portion of the proceeds thereof to discharge its aforesaid 5½% Bonds, and such application has been filed by the Commission with this Court.

## Conclusions of Law.

1. This Court has jurisdiction over the Plan, over Central States, over the assets of Central States, and over all persons affected by the Plan.

2. The Commission gave reasonable notice and opportunity for hearing upon the Plan presented herein for enforcement by this Court; and reasonable notice and opportunity was given for hearing before this Court upon the issues raised by the application of the Commission in accordance with Section 11(e) of the Act.

3. The Plan, including the terms and provisions thereof relating to the sale of Central States' properties and the retirement of Central States' aforesaid 5½% Bonds, is appropriate to effectuate the provisions of Section 11(b) of the Act.

4. If the provisions of Article 7 of the Indenture securing Central States' 5% Debentures be deemed applicable to and a restriction upon any sale of the properties presently proposed to be sold by Central States, the necessity of the present sale in order to enable Central States to effectuate the provisions of Section 11(b) of the Act dispenses with the necessity for observing any such indenture restriction.

5. When the retirement of an issue of bonds is attributable to Section 11 of the Act, the payment is not voluntary and the bonds may be retired without the payment of voluntary redemption premiums. Therefore, the holders of Central States' 5½% Bonds are not entitled to be paid the redemption premium.

6. The Plan, including the terms and provisions thereof relating to the sale of Central States' properties and the retirement of Central States' 5½% Bonds, is necessary to effectuate the provisions of Section 11(b) and fair and equitable to the persons affected thereby.

7. To the extent necessary to enforce and carry out the terms and provisions of the Plan, it is appropriate for this Court to retain exclusive jurisdiction of Central States and its assets. This Court will order that such terms and provisions of the Plan be consummated, and will di-

---

[1] The Findings, Opinion and Order referred to are published in the Commission's Holding Company Act Release No. 5351.

rect Central States and its officers, directors and agents, and the trustees under the Indenture securing Central States' $5\frac{1}{2}\%$ Bonds, and their agents, to take such steps and perform such acts as may be necessary for the purpose of carrying out said terms and provisions of the Plan.

8. The Plan having been approved by the Commission and by this Court in accordance with Section 11(e) of the Act by order to be entered, all persons will be enjoined from instituting or maintaining any action in any Court, or any proceeding before any administrative body, tending to obstruct the execution of the Plan.