*In re* **INTERSTATE POWER CO.** *et al.*
**Civ. No. 1003.**

District Court, D. Delaware.
April 10, 1947.

Myron S. Isaacs, of Philadelphia, Pa., for Securities & Exchange Commission.

Clement F. Springer (of Matthews & Springer), of Chicago, Ill., for Interstate Power Co.

Douglas A. Calkins (of Simpson, Thatcher & Bartlett), of New York City, for Ogden Corporation.

Frank H. Detweiler (of Cravath, Swaine & Moore), of New York City, for Chemical Bank & Trust Co.

Paul J. Kern, of New York City, for Samuel Plotkin.

LEAHY, District Judge.

This is what the plan of reorganization does—it provides that Interstate, an electric utility company which is also a registered holding company, will reduce its debt, eliminate its preferred stock, create a new common stock with an equity in assets and earnings, raise working capital and reserve the relative rights of its security holders pending the determination of the legal issues relating to the possible subordination of holdings of Interstate's parent, which is also a registered holding company. The machinery employed will be the sale of new first mortgage bonds and a number of sales of the new common stock; the outstanding common stock will be cancelled and the first mortgage bonds will be paid off without premium. There are two

alternatives. The first calls for the payment of other outstanding debt securities and the distribution of new common stock to preferred stockholders, together with certificates of contingent interest in later distributions to the parent company; the second calls for an escrow for those security holders junior to the first mortgage bonds by setting aside shares of new common stock not sold to realize cash for the payment of outstanding first mortgage bonds and for working capital. The choice of the alternatives to be utilized depends upon market conditions at the time of the consummation.

1. The plan provides for means of bringing about a fair and equitable distribution of voting power among the security holders. To this extent the plan is necessary to satisfy the provisions of § 11 (b) within the meaning of § 11(e) of the Act.

2. The first mortgage bondholders are receiving fair treatment. Where the retirement of debt occurs under the compulsion of § 11 the retirement is not voluntary or "at the option of the company" within the meaning of the standard redemption provision. Hence, in every case redemption premiums, as such, are not always payable. In re Consolidated Electric & Gas Co., D.C.Del., 55 F.Supp. 211; In re Standard Gas & Electric Co., D.C.Del., 59 F.Supp. 274; Id., 3 Cir., 151 F.2d 326; In re North Continent Utilities Corporation, D.C.Del., 54 F.Supp. 527; In re Central States Power & Light Corporation, D.C.Del., 58 F.Supp. 877; New York Trust Co. v. S.E.C., 2 Cir., 131 F.2d 274 (certiorari denied 318 U.S. 786, 63 S.Ct. 981, 87 L.Ed. 1153; rehearing denied 319 U.S. 781, 63 S.Ct. 1155, 87 L.Ed. 1725); City National Bank & Trust Co. v. S.E.C., 7 Cir., 134 F.2d 665. I agree with the SEC's reasoning and analysis that the investment calibre of the first mortgage bonds in the case at bar compared with their pertinent contract rights does not warrant the payment of the principal amount in excess of par.

3. A holder of both the 6% and 7% preferred stock challenges the SEC's power to institute the present proceedings since, it is argued, it lacks jurisdiction to impose a reorganization on an operating utility company. Much reference to legislative history is had to sustain the point;[3] and support for the view is directed to the third sentence of § 11(b) (2) which states: "Except for the purpose of fairly and equitably distributing voting power among the security holders of such company, nothing in this paragraph shall authorize the Commission to require any change in the corporate structure or existence of *any company* [in a registered holding company system] *which is not a holding company, or of any company whose principal business· is that of a public-utility company.*" (Emphasis supplied.)

It is argued that the Commission may only act with respect to a public utility operating company for the sole purpose of equitably distributing voting power. Such was not the view taken in Re Jacksonville Gas Company, D.C., 46 F.Supp. 852, or by this court in Re United Gas Corporation, D.C.Del., 58 F.Supp. 501, or in Re Laclede Gas Light Company, D.C., 57 F.Supp. 997. I think the point without merit. And it must be remembered that the instant company is, in fact, also a registered holding company.

4. There is further objection, principally from the Chemical Bank & Trust Company, as Successor Trustee under the indenture, on behalf of the debenture holders, to Alternative Two of the plan. The main objections from this source are (1), it is not fair and equitable to debenture holders since it violates the absolute priority rule and because it does not compensate them for loss of their creditor position; and (2), this court should not evaluate the fairness of the plan absent an absolute determination by the SEC as to whether the preferred stock has any present value. These arguments supporting both objections are palpably unsound. But, since these arguments have been made repetitively before this court in § 11 proceedings, I think it time to point out in some detail why I think they must be denominated as fallacious.

---

[3] Cong.Rec. 79th Cong., 1st Session pp. 10366, 10536, 10501 and 14620.

Since one of the earliest cases for federal district court enforcement under the Act was brought to me for consideration and approval, it has been consistently conceded by all parties, including the various sets of attorneys for the SEC, in this and in all other cases brought to the enforcement court, that a § 11(e) court has the affirmative and independent duty to consider and find whether a proposed plan is fair and equitable; and consequently such a court must consider whether the senior security holders are to get the "equitable equivalent" of the rights which they are asked to surrender, i.e., is the plan fair and equitable to the security holders affected by it? The Successor Trustee argues the present plan violates the fixed principle of full and absolute priority, as established by Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Northern Pacific Railway Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931; and Consolidated Rock Products Co. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982; Group of Institutional Investors v. Chicago, M. St. P. & P. R. Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959; because the plan here does not compensate debenture holders for the loss of their creditor position.

Here is the first point of examination—in Group of Institutional Investors v. Chicago, M. St. P. & P. R. Co., supra [318 U.S. 523, 63 S.Ct. 749], Mr. Justice Douglas, in recognizing that phase of the financial problems facing the Court, said: "It is sufficient that each security holder in the order of his priority receives from that which is available for the satisfaction of his claim the equitable equivalent of the rights surrendered. That requires a comparison of the new securities allotted to him with the old securities which he exchanges to determine whether the new are the equitable equivalent of the old. But that determination cannot be made by the use of any mathematical formula. Whether in a given case senior creditors have been made whole or received 'full compensatory treatment' rests in the informed judgment of the Commission and the District Court on consideration of all relevant facts." Resting on this, the Successor Trustee ar-

gues that the fixed rule of full priority is incorporated in § 11 of the Act by the use of the term "fair and equitable" ("words of art") in such section and points to In re United Light & Power Co., 3 Cir., 142 F.2d 411, 413, affirmed Otis & Co. v. Securities and Exchange Commission, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 1436, for imprimatur.

True, the Successor Trustee correctly states the language of this Circuit and the Supreme Court. I think, however, that it is and has been the constant use of that language which has caused confusion in the profession. What governmental and private litigants have overlooked is, while the principle of full priority may apply in both situations, i.e., in bankruptcy situations and in proceedings under the Public Utility Holding Company Act, the presence of the insolvency factor often results in different answers. In re United Light & Power Co., D.C., 51 F.Supp. 217, affirmed In re Securities and Exchange Commission, 3 Cir., 142 F.2d 411, 413, affirmed sub. nom. Otis & Co. v. Securities and Exchange Commission, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511, is absolute proof of this statement; because it is perfectly obvious that had United Light & Power been insolvent and the claims of the senior securities had therefore matured, the common stockholders would not have participated and would have received nothing under the plan there under examination. This was conceded by the parties. It was conceded further that the possibility of the common stock acquiring value was very remote; yet, the SEC thought the common stock should have some participation even in the light of a possibility that the estimate of future earnings might prove to be erroneous. On the date of the plan the company involved and the SEC hoped that many years distant the common stock would emerge from under water. In short, it was solemnly said that it was only legal cricket that the common stockholders should be given a chance to recoup, especially where the reason for the liquidation (or, i.e., reorganization) was purely fortuitous because of forced compliance with the Act[4] and where the future condi-

---

[4] Cf. In re Consolidated Electric & Gas Co., D.C.Del., 55 F.Supp. 211, 215, 216.

tion of the new enterprise was based on a surmise; no one had prescience to envisage with exact certitude what would be the value of junior securities. While the Supreme Court, reviewing the situation, did suggest that the full priority rule applies to a § 11(e) proceeding, it seems manifest that the result may vary in each particular case depending upon the presence of the insolvency or the solvency factor. Accordingly, I wish to emphasize that quotations and holdings from insolvency cases may not be apposite in all § 11(e) proceedings and, especially, of a solvent public utility holding company.[4a]

I place the pointer to the blackboard to illustrate the matter further by a quotation from Consolidated Rock Products Co. v. Du Bois, 312 U.S. at pages 528, 529, 61 S.Ct. at page 686, 85 L.Ed. 982, where Mr. Justice Douglas had previously said: "The plan then comes within the judicial denunciation because it does not recognize the creditors' 'equitable right to be preferred to stockholders against the full value of all property belonging to the debtor corporation'". Now, as stated before, had United Light & Power been insolvent and had the rights of the senior securities accordingly matured, it cannot be that the common stock could have participated because, one, the senior securities were not satisfied in full, and two, there was no foreseeable value—this side of 15 years—to the common stock.[5] I have always thought that it serves no useful purpose, but rather merely tends to confuse the issues to cite cases in the bankruptcy sense, involving the full priority rule, to support certain arguments in cases involving attempts to comply with the Public Utility Holding Company Act, where insolvency is seldom present. Where insolvency is not present the judicial techniques, at least, which should be utilized to see whether the senior securities are given their equitable equiva-

---

[4a] Although there has been some vacillation, the original position of the Commission before this court in Re United Light & Power Co. recognized the distinction of the text and that the problem was sui generis. In the findings and opinion of the Commission in Re United Light & Power Co., Application No. 14, p. 9, the Commission, for example, said: "We have found no judicial precedents which are determinative of the precise question before us. Decisions like those in the Los Angeles Lumber and Boyd cases are predicated on sets of facts fundamentally distinguishable from the situation arising here. In bankruptcy or equity reorganizations, where some financial disaster overtakes or threatens to overtake an enterprise, the courts and Congress have proceeded on the theory that it is often in the interest of creditors and other claimants that the enterprise be permitted to continue in operation, but with a new capital structure. Creditors and other claimants are prevented from foreclosing or otherwise compelling an actual liquidation, but new securities are distributed among them according to their contractual and other rights determined *as though in liquidation*. The historical background of this approach is so familiar as to need no elaboration here."

The same distinction seems to be recognized by the Commission in In the Matter of Engineers Public Service Company, at pp. 8 et seq. of the Commission's memorandum in that case.

[5] In this Circuit, at least, the creditor of a solvent public utility holding company may be accepted to be in an inferior position. The creditor is not considered to have an "equitable right to be preferred to stockholders against the full value of all property belonging to the debtor corporation" * because all securities of an issuing corporation are based on the same assets. I point to In re Standard Gas & Electric Co., 3 Cir., 151 F.2d 326, 332, where this Circuit said: "They are getting the cream off the milk in the Standard ice box. Nor does this distribution in kind turn them from investors to speculators. All they ever had was the corporation's promise. This promise was backed by what the corporation owned and what the corporation owned was junior equities in a number of public enterprises. *Owning the junior equities is no more speculative than the promise of the corporation whose assets consist of such equities*." (Emphasis supplied.)

I am required to respect this holding and, therefore, that the debenture holders are, under Alternative Two of the plan sub judice, required to exchange their creditor position for a qualified equity position and this must not necessarily defeat court approval of the plan.

*Consolidated Rock Products Co. v. Du Bois, supra. 312 U.S. at pages 528, 529, 61 S.Ct. 675, 85 L.Ed. 982.

170

lents and whether junior securities should participate at all, are different.[6]

After consideration of all the financial factors which were presented to the SEC, including the solvency of Interstate, and the compulsion which operated on all of its security holders to comply with the impact of the Act, I conclude the plan is fair and equitable to the debenture holders vis-a-vis the preferred stockholders.

5. The other argument of the Successor Trustee, that this court cannot evaluate the fairness of the plan, absent a determination by the SEC as to whether the preferred stocks have present value, does, I think, neatly illustrate the points which I have tried to show, supra. While it may be true that such a determination is necessary where insolvency is present, it is not necessary in a § 11(e) proceeding involving a solvent public utility holding company. Again I re-emphasize this was the precise circumstance in Re United Light & Power, supra, because there it was conceded on all sides that the common had no present value and very little chance of prospective value; yet the common was given some participation in the reorganization. Again I re-emphasize that in bankruptcy situations whether of actual insolvency or in the bankruptcy sense of inability to meet debt charges as they fall due, such reorganizations are concerned first, last and at all times with strict adherence to the "absolute priority rule", which simply means you are concerned with present values of securities to insure that the senior securities receive the equitable equivalent of that which they are asked to surrender, based on their matured claims.

For specific findings I adopt the findings of the Commission. An order should be submitted which provides for approval of the plan.

---

[6] I think this problem can be most clearly illustrated by the following illustration which is based substantially on the real facts in Re United Light & Power Co., D.C.Del., 51 F.Supp. 217, affirmed In re Securities & Exchange Comm., 3 Cir., 142 F.2d 411, 413, affirmed sub nom. Otis & Co. v. S. E. C., 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511. In that case Class A preferred was entitled on dissolution or liquidation to receive out of the net assets of the corporation, whether capital or surplus, for each share of such stock, $100 and a sum of money equivalent to all cumulative dividends on such share, both accrued and in arrears (whether or not the same shall have been declared or earned), including the full dividend for the then current quarterly period, before any payment was to be made to the holders of any stock other than the Class A preferred stock in accordance with their rights at the time of distribution. Admittedly, preferred had a principal claim of $60,000,000 and an accumulated dividend charge of $38,700,000. The assets, let us assume, are worth $58,000,000. Now if the preferred's claim is treated as having matured, the inquiry is whether what they are receiving is the equitable equivalent of the claim of $98,700,000 plus compensation for loss of preferred status. Obviously, then, if the preferred's claim was treated as matured there could be no participation for the common. The reason the claim was not treated as matured was because the company was not insolvent and therefore it was not a liquidation, voluntary or involuntary, within the meaning of the charter. Under the Public Utility Holding Company Act, you do not start with the figure $98,700,000 to see whether the preferred or other senior security is receiving its equitable equivalent from the assets, but you evaluate the property on the basis of going concern value, and the various security holders are treated accordingly. This latter test is much less precise because it is permissible to estimate and consider the situation many years into the future and this approach was referred to by the minority in Otis & Co. v. S. E. C., 323 U.S. 624, 65 S. Ct. 483, 89 L.Ed. 511, as the Alice in Wonderland approach; yet, nevertheless, it has been working in practice. In short, in one case you would start with the figure $98,700,000 and in the other situation you do not give it such controlling weight.

This distinction has been well recognized in congressional and financial circles. See H.R.2857, 78th Cong., 1st Sess., for a Bill to make the Public Utility Holding Company Act rules apply to reorganizations under the Bankruptcy Act, and editorial in the Wall Street Journal, Wednesday, January 31, 1945, p. 5.