## In re INTERSTATE POWER CO., OGDEN CORPORATION.

Civ. A. No. 1003.

United States District Court
D. Delaware.

Dated Feb. 23, 1950.

On Rehearing March 2, 1950.

LEAHY, Chief Judge.

This is an application by the Securities and Exchange Commission for enforcement of the terms of a "compromise plan" as modified and approved by the Commission. I indicate only briefly the provisions of the plan. A more detailed statement can be had from the opinion of the Commission issued June 8, 1949, Holding Company Act Release No. 9138. In short, the plan provides for the distribution of cash and securities escrowed pursuant to the Alternate Plan of reorganization of Interstate Power Company enforced by this court on January 7, 1948.* Parties having claims upon the escrowed assets are the Note Escrow Certificate-holder, Ogden Corporation ("Ogden"), the Debenture Escrow Certificate-holders ("debentures") and Preferred Escrow Certificate-holders ("Preferred"). The Colton group objects to the plan because it is claimed that it is unfair and inequitable to the public-holders of Interstate Power Company's preferred; i. e., the plan accords unfair treatment to the preferred stockholders as a class vis-a-vis the treatment to be accorded Ogden.

The staff of the Public Utilities Division of the SEC also were of the view and recommended to the Commission that the plan was unfair and inequitable to the public-holders of Interstate Power's preferred stock. The basis for the Staff's recommendation was the valuation placed on the escrowed stock of Interstate Power Company. The Staff recommended an evaluation at $8.00 instead of $7.35.

The Colton group urges that the stock should be valued at least at $8.00 per share, as recommended by the Staff, and that since the Commission found that the subordination issue was established against Ogden, Ogden should be subordinated to the claims of the public preferred stockholders, and since this was not done, the

---

Harry G. Slater, Chief Counsel, Division of Public Utilities, Myron S. Isaacs, Frank Field and Alfred Letzler, Washington, D. C., for the Securities and Exchange Commission.

William H. Foulk, of Wilmington, Del., David J. Colton and Alfred Berman (of Guggenheimer & Untermeyer), of New York City, for the Colton Group of Preferred Stockholders.

Marshall A. Jacobs and Douglas A. Calkins (of Simpson, Thacher & Bartlett), of New York City, for Ogden Corporation.

Paul J. Kern and James F. Dunn, of New York City, for Interstate Power Company, Preferred Stockholders Committee.

* This court approved a major phase of reorganization at an earlier time in these proceedings. See D.C., 71 F.Supp. 164, 166. In that opinion, the court stated:

"The SEC will continue proceedings for a final disposition of the issues raised concerning the rank and status of the $2,475,000 demand note and the 12,569 shares of Interstate's preferred stock held by Ogden. There will be no final determination of such issues until an order of the SEC with respect thereto has been approved by a court of competent jurisdiction in enforcement proceedings, * * *."

plan is unfair and inequitable, and is not supported by substantial evidence. The Commission and Ogden generally take the negative of this position and assert that there is substantial evidence to support the opinion of the Commission and it is not inconsistent with law.

Since the decision in this case depends in large part upon the findings and opinion relative to the subordination issue, it will be necessary to detail the facts and circumstances. In its opinion, the Commission considered the subordination issue in great detail. After considering Ogden's defenses it was concluded: " * * * We find that the record shows a prima facie case for subordination predicated on the entire course of dealings between Utilities Power and Interstate" and it also was stated " * * * that a prima facie case for subordination has been established" and that the defenses of Ogden were without merit. It was further stated that "The subordination principle may be applied to Ogden's claims". The Commission referred to the subordination issue as "prima facie" because while Ogden vigorously asserted its available defenses, nevertheless it continued to claim that it "reserved the right to introduce rebuttal evidence". The Colton group contends that "prima facie", as used in the Commission's opinion, must mean that the subordination issue has been established and consequently the conclusion of the Commission that there is a basis for compromise does not follow from its basic and definitive findings. The final sentence of the opinion of the Commission states: "We conclude on the facts before us that a compromise is not inappropriate, and we shall accordingly proceed to consider the fairness of the particular proposals presented in the Plan."

The issue which this court must pass on is a very narrow one, viz., are the earlier findings in the opinion of the Commission basic or is the final sentence of the opinion the ultimate and real finding of the Commission? I think the argument of the Colton group is far from frivolous. But I am not persuaded by it. True, the early part of the Commission's opinion indicates that the subordination doctrine should be applied against Ogden's claims. Nevertheless, where there is a conflict between such intimations or inferred meaning and the conclusion contained in the final sentence of the opinion, the conflict should be resolved in favor of the Commission. Obviously the Commission itself did not give the meaning to the earlier statements which the Colton group have urged they did. Consequently, the ultimate and decisive finding is that there is a basis for compromise on the subordination issue. Since there is evidence to support that finding and since the conclusion is not contrary to law, I am bound under S.E.C. v. Central-Illinois Securities Corp., 338 U.S. 96, 69 S.Ct. 1377, to accept the Commission's finding.

Judicial review, as Professor Dodd has suggested (63 Harvard Law Review 298), has been greatly restricted by the Engineers decision, 338 U.S. 96, 69 S.Ct. 1377, and while he appears to be satisfied with the result, he nevertheless points out that the Engineers case leaves little scope for litigation over the validity of SEC orders approving § 11 plans as fair and equitable. However, an enforcement order of this court, superficially at least, must carry the imprimatur of this court. For this reason, I have adopted the practice of indicating those situations in which, were I wholly free to make an independent determination, I would differ with the conclusion of the Commission. In the Matter of Federal Water and Gas Corp. et al., D.C.Del., 87 F.Supp. 289; In the Matter of Commonwealth & Southern Corporation, D.C.Del., 84 F.Supp. 809. This is such a case.

I agree with the original view of the Staff of the Commission that the plan is unfair and inequitable because of the valuation placed on the Interstate stock. I disagree with the Staff on the next point, however. I think, from a review of the Commission's opinion and from an independent examination, that the subordination doctrine should be applied against Ogden's claims. Moreover, I am unimpressed by the arguments made by all parties—in which the Colton group does not join—that weight should be attached to Ogden's reserved right to put in rebuttal evidence. If there is evidence which is material, it

should have been put in before the Commission. In fact, the very function of the administrative process, as I understand it, would be to make a determination based on reality and give little, if any, consideration to alleged secret contingent defenses. After long and elaborate hearings, it seems fantastic to attach weight and give large value to secret and contingent defenses asserted by Ogden against the claim of subordination.

As stated before, the Commission made an ultimate and decisive finding that there was a basis for compromise on the subordination issue. Hence, there is evidence to support that finding and since the conclusion is not contrary to law I shall entertain an order approving the plan. After the present matter was taken under advisement, the Colton objectors moved to introduce new evidence or to remand the cause to the Commission. Several days ago they filed a second and supplemental motion for leave to introduce new evidence in support of the motion to remand. The proffer of proof is not persuasive enough to change the result I have reached above. Accordingly, the proposed order approving the plan may contain provisions denying the two motions.

### On Petition for Rehearing

The Colton Group seeks rehearing because of alleged changed circumstances affecting values. They urge a remand of these proceedings to the Securities and Exchange Commission for reconsideration as to whether the instant plan is fair and equitable in presenti. While the case was awaiting decision the Colton Group under several motions made proffer of proof indicating that drastic changes had occurred in the value of the Interstate stock. In approving the plan I did not discuss the so-called new evidence but merely stated that "The proffer of proof is not persuasive enough to change the result * * * reached above". The petition for rehearing argues that this is tantamount to saying that a change of values on which the plan was predicated, to the extent of some 250% to more than 500%, is not sufficiently persuasive to require a reconsideration of the fairness of the plan by the SEC.

The fact is the Colton group misconceives the basis of my memorandum opinion on the valuation problem. Under the law, as articulated by the appellate courts, I must assume and I do assume the SEC represents the interests of all classes of security holders. Such assumption is inevitable on the record in this case; had the Commission thought, on the basis of the several motions filed by the Colton Group subsequent to hearing but prior to decision, that the drastic change in value of the Interstate stock was of sufficient importance to require a reconsideration of the fairness of the plan, the Commission manifestly would have informed this court of that fact. Obviously such a procedure is within the province of the Commission.

There often are frailties in any human organization, whether private or governmental, and this leads me to conclude that the Colton Group should be given the opportunity to verify that the Commission in this particular case consciously considered the problem posed in the various Colton motions. To that end I shall give the Colton Group 15 days from the date of this memorandum to present its alleged new evidence to the Commission for the purpose of ascertaining whether the Commission thinks the circumstances have changed so drastically that the plan proposed is no longer fair and equitable. After this, I think the Commission, under its expert competence, should furnish this court one of the following types of information: (1) That it has considered the material constituting the so-called new evidence as referred to in the Colton motions, but is of opinion that such material does not affect the fairness and equity of the existing plan; or (2) that it has not considered the material in the Colton motions but wants more time to consider the problem posed by such proffer of new information.

Such a procedure is not only fair to the Colton petitioners but also accords with the dictates of the Engineers case, as pronounced in S. E. C. v. Central-Illinois Securities Corp., 338 U.S. 96, 69 S.Ct. 1377. Several years ago, in connection with In

**72**

re Standard Gas and Electric Company, D. C., 63 F.Supp. 876, after reversal by the appellate courts, 3 Cir., 151 F.2d 326, certiorari denied 327 U.S. 796, 66 S.Ct. 820, 90 L.Ed. 1022, I did consider changed circumstances and indicated that where I thought they were drastic enough I would remand the matter to the . Commission. The basis for this expression of opinion was a misconception on my part of the scope of judicial review by an enforcement court in a § 11 proceeding, 15 U.S.C.A. § 79K. The scope of such review, as suggested in the earlier memorandum filed in the case at bar, was narrowly proscribed by the Supreme Court in the Engineers case. Accordingly, I think whether changed circumstances are sufficiently drastic to require reconsideration by the SEC before a decree is entered, especially when the changed circumstances affect the question of valuation, is a matter which the late Justice Rutledge considered fell within the expertese of the SEC and not any federal district enforcement court.