## In re CENTRAL STATES POWER & LIGHT CORP. et al.

### Civ. A. No. 354.

United States District Court
D. Delaware.
July 13, 1951.

James ·D. Hill, George B. Searls, and Edward J. Friedlander, Attorneys, Litigation Branch, Office of Alien Property, all of Washington, D. C., and William Marvel, U. S. Atty., of Wilmington, Del., for J. Howard McGrath, Atty. Gen., as successor to Alien Property Custodian, petitioner.

Marshall A. Jacobs, of New York City, (Robert W. Sweet and Howard R. Patch, Jr., (of ·Simpson, Thacher & Bartlett), of New York City of counsel), for Ogden Corp.

Myron S. Isaacs, of Washington, D. C., for Securities and Exchange Commission.

Roy C. Haberkern, Jr. (of Milbank, Tweed, Hope & Hadley), of New York City, for Chase Nat. Bank & Carl E. Buckley, Trustees.

H. Bartow Farr, Jr. (of Sullivan & Cromwell), of New York City, for State of the Netherlands.

LEAHY, Chief Judge.

Since no constructive addition to the opinion-literature of corporate reorganization cases [1] would ensue from an extended discussion of what has heretofore occurred

1. Elsewhere, reorganization opinion—literature has been described by an astute commentator as "always interesting and often brilliant." Adolf A. Berle, Jr., Book Review, E. Merrick Dodd and De Forest Billyou, Cases and Materials on Corporate Reorganization, 64 Harvard L.Rev. 1224, 1227.

in the matter at bar,[2] I shall confine myself to the immediate facts which form the background to the questions now presented.

In December, 1947, an order was entered approving a plan for the liquidation and dissolution of the Central States Power & Light Corporation (hereinafter referred to as Central). The plan provided *inter alia* for the redemption of the 5½% First Mortgage and First Lien Gold Bonds of Central (hereinafter referred to as Gold Bonds) other than those held by the Ogden Corporation, and it was particularly provided that any residual portion of the funds on deposit with the Trustee would be forfeited to Ogden, unless claimed by the security holders before the cut-off date of December 17, 1950. Later the December 1947 order was amended by order of November 17, 1950, which provided for additional steps to be taken by Ogden in locating and notifying such security holders. What is before the court here is the claim of the Attorney General of the United States as successor to the Alien Property Custodian to thirteen of the Gold Bonds and the claim of the State of the Netherlands to fifty of such bonds. The claim of the Attorney General will be considered first.

1. In January, 1950, by Vesting Order No. 14237,[3] there was said to be vested in the Attorney General the debts or other obligations evidenced by thirteen specified Gold Bonds as "property within the United States owned or controlled by, payable or deliverable to, held on behalf of or on account of, or owing to, or which is evidence of ownership or control by, the aforesaid national [Heesch, Hinrichsen & Company] of a designated enemy country (Germany) * * *". The Attorney General claims the right to the funds on deposit with the Trustee, Chase National Bank, allocable to the thirteen bonds referred to, under and by virtue of his Vesting Order. None of the thirteen bond certificates is in the possession or under the control of the Attorney General nor have any of these bonds been cancelled or presented to Chase National Bank for payment.[4] Demand was made by the Attorney General of Central, % Chase National Bank, to cancel the bonds on its books and to issue its check to him representing payment of principal and interest due. The Bank refused to comply. The Attorney General then, in December, 1950, with permission of the court and without objection by counsel, intervened in this proceeding seeking a determination that through the Vesting Order the Attorney General was possessed of all right, title and interest to those funds, held by the Chase National Bank, as Trustee, under the plan formerly approved in this proceeding, for payment of the thirteen Gold Bonds specified in Vesting Order No. 14237.

Chase as Trustee and Ogden, as residuary beneficiary under the plan of any unclaimed bond funds, take a position in opposition to the government's claim that 1. the Vesting Order cannot be complied with until the bonds have been presented for cancellation pursuant to the implied conditions of paragraph 10 of my order of December 3, 1947[5] and 2. the Attorney

---

2. Earlier opinions indicate the various problems arising under a typical § 11 action under the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79k. See D.C.Del., 74 F.Supp. 360; 58 F.Supp. 877.

3. The Vesting Order was issued pursuant to the authority of §§ 5(b) and 7(c) of the Trading with the Enemy Act, 50 U.S.C.A.Appendix, §§ 1–40, as amended, and Executive Order No. 9095, 7 F.R. 1971, as amended by Ex.Or. 9193, 7 F.R. 5205, and Ex.R. 9788, 11 F.R. 11981, 50 U.S.C.A.Appendix, § 6 note.

4. When last reported in November, 1949, the bonds were being held in the Lande-

szentral bank, in the British Zone of Occupation of Germany. The Attorney General does have photostats of the securities.

5. Paragraph (10): "If any holders of the 5½% First Mortgage and First Lien Gold Bonds of Central States, other than Ogden, shall not have done all acts necessary to secure possession of funds, representing unpaid principal and interest to which they are entitled, which funds are on deposit with The Chase National Bank of the City of New York as Trustee, prior to December 17, 1950, all rights of such persons to any such funds shall cease and determine * * *".

General lacks the power to seize obligations evidenced by negotiable instruments where he has not obtained possession of the outstanding debentures and cannot present them for cancellation. The objections by Chase, as Trustee, pose, therefore, the following questions for decision: (a) Are the thirteen Gold Bonds, admittedly located in Germany, property "subject to the jurisdiction of the United States" or "within the United States" which can be vested without such bonds being reduced to possession by the Attorney General where funds for the payment of the principal and interest due on the bonds are held in the United States; and (b) Should this court under the circumstances of this case permit payment to be made to the Attorney General assuming the Vesting Order to be valid?[6]

 On the basis of the reasoning and conclusion of Chief Judge Learned Hand, speaking for a unanimous court in McGrath v. Cities Service Company, 2 Cir., 189 F.2d 744, I answer both questions in the affirmative. The similarity of the issues in the cited case and those in the case at bar obviate the need for any addition by me to the comprehensive opinion of Judge Hand. An order, therefore, may be submitted directing the payment by Chase to the Attorney General of the funds represented by the thirteen specified Gold Bonds.

 2. I now take up the claim of the State of the Netherlands. On November 17, 1950, the State of the Netherlands by court order was permitted to intervene in the original § 11 proceeding to protect its rights to funds held by Chase allocable to fifty[7] of the Gold Bonds to which the Netherlands Government claimed title on behalf of its subjects. The securities claimed were alleged to have been looted by the Germans during World War II. The Netherlands Government claims title to these bonds by virtue of the Netherlands Royal Decree of May 24, 1940, which vested in the Netherlands Government protective title for the conservation of the rights of the former owners to certain assets of Netherlands' subjects including the fifty-odd securities here sought. In the order permitting the Netherlands Government to intervene here, it was further provided that the right of the Netherlands Government to the funds allocable to the securities would not cease and determine until it had a reasonable time (estimated as June 1, 1951) to present to Ogden and the court proof of its right to these funds. As of this writing no such proof has been presented to the court at least by the Netherlands Government. It is suggested an order be submitted for signature extending the time in which the Netherlands Government may come forward with data in support of its claim, if such extension of time is thought necessary by counsel to meet the exigencies of litigation.[8]

6. A question which obliquely questioned this court's jurisdiction as to the precise matter at bar was suggested, i. e., whether this court exercised jurisdiction over the Central States Companies since they are here under the enforcement of a plan pursuant to the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq. The point was not pressed and I am, of course, not deciding it.

7. There is some question as to the exact number of Gold Bonds to which title is asserted. Fifty-two certificate numbers, in fact, are listed in the letter of the Netherlands Government to Chase demanding payment of funds represented by the securities. Chase has indicated through its counsel that at least seven of the certificates listed have been presented by the issuer to the Trustee for cremation and have, in fact, been cremated.

8. By a General Ruling issued January 18, 1951, the Department of Justice, Office of Alien Property, has attempted to immobilize the securities claimed here by the Netherlands Government. Code of Federal Regulations, Title 8, § 511.-205b (General Ruling No. 58), p. 6. This General Ruling represents part of a program designed to restore to their original owners securities which were looted by the Germans during the occupation of various allied countries. The great bulk of these securities were reported as having been looted in the Netherlands. The General Ruling requires that domestic scheduled securities be deposited with the Federal Reserve Bank of New York not later than July

20, 1951. The court has made inquiry and is informed that it is contemplated that securities included in the list not so deposited by July 20, will shortly thereafter be vested by the Office of Alien Property and appropriate steps taken to turn them or the proceeds thereof over to the original owners. If on presentation of proof I am satisfied the Netherlands Government is entitled to the funds on deposit with the Chase National Bank allocated to the bonds in question,

I am further informed the Office of Alien Property would not vest the bonds but payment to the Netherlands Government of the funds would be authorized pursuant to License No. NY850179-S issued to the Netherlands Embassy in connection with the looted securities program. The final determination as to the disposition of the bonds must await the presentation of proof of its claim by the Netherlands Government.