In re COMMONWEALTH & SOUTHERN CORPORATION.

No. 10045.

United States Court of Appeals
Third Circuit.

Argued Jan. 17, 1950.

Decided Aug. 23, 1950.

T. Roland Berner, New York City (M. Victor Leventritt, Julian S. Bush, Aaron Lewittes, New York City, on the brief), for appellant.

George Roberts, New York City (Winthrop, Stimson, Putnam & Roberts, Hayden N. Smith, New York City, on the brief), for Commonwealth & Southern Corporation.

Roger S. Foster, Washington, D. C. (Harry G. Slater, Chief Counsel, Division of Public Utilities, Myer Feldman, Joseph M. Paul, Jr., all of Washington, D. C., on the brief), for Securities and Exchange Commission.

Sanford L. Schamus, New York City, amicus curiae.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from the order of the District Court of July 15, 1949, approving and enforcing a plan, as amended, filed with the Securities and Exchange Commission by the Commonwealth & Southern Corporation, pursuant to Section 11(e) of the Public Utility Holding Company Act of 1935, 49 Stat. 820, 15 U.S.C.A. § 79k(e).

Appellant is the owner of Commonwealth option warrants. She first appeared in this matter at the hearing in the District Court. She did not participate in the proceeding before the Commission and offered no evidence in the District Court. The options receive nothing under the amended plan. The Court below found that while this was regrettable " * * * the SEC's action has not been contrary to law and its findings are sustained by adequate evidence."

In re Commonwealth & Southern Corporation, D.C.Del., 84 F.Supp. 809, 811.

A phase of this litigation was before us some time ago when appellant, after taking her appeal, applied for a stay of the enforcement of the plan, pending argument on the merits. The stay was denied and on October 1, 1949, the plan was effected, the corporation was dissolved and its assets distributed. Appellant and the intervenor are the only objectors to the plan.

Appellant urges that the options had substantial value for which compensation should have been provided in the plan.

Under a Commonwealth option warrant, its holder, after September 1, 1949, had the right to purchase a share of common stock "as its Common stock may be constituted at the time of purchase at a price of $30 per share." The Commission found that "the option warrants have no recognizable value and that the holders of such warrants are not entitled, under the standards of fairness and equity, to any participation in the reorganization of Commonwealth."

■ "The Commission's findings as to valuation, which are based upon judgment and prediction, as well as upon 'facts,' * * * are not subject to reexamination by the court unless they are not supported by substantial evidence or were not arrived at 'in accordance with legal standards.' " Securities & Exch. Comm. v. Central-Illinois Securities Corp., 338 U.S. 96, 126, 69 S.Ct. 1377, 1393, 93 L.Ed. 1836. This is the test to be applied to the case before us.[1]

■ The Commission's holding that the option warrants had "no recognizable value" is solidly supported by the record. The president of Commonwealth testified that the Commonwealth board of directors, even under the most optimistic view of possible paid up earnings by its subsidiaries, saw no prospect of the type of earnings which would make the common stock worth $30 a share and for that reason made no provision for the warrants.[2] Hartt, the Commonwealth expert, gave as his judg-

1. See Professor Dodd's article, 63 Harv. Law Rev. 298.

2. Cf. Ecker v. Western Pacific R. Corp., 318 U.S. 448 at page 476, 63 S.Ct. 692, 87 L.Ed. 892.

ment that the warrants were not entitled to any compensation because it was almost inconceivable that Commonwealth would attain such earnings as would result in a price of $30 a share for the common stock, even though the stock were sold in the future at fifteen to twenty times earnings—in his opinion an unreasonable expectation. Appellant does not challenge the evidence before the Commission on which the latter based its conclusion, also not challenged, that "the reasonably foreseeable consolidated net income of Commonwealth may be estimated to average about $30,000,000 a year." Nor does appellant dispute the Commission's calculation that such an income, applied proportionately to the various interests in Commonwealth, if Commonwealth remained in existence, would be equivalent to about 63¢ per share of Commonwealth's common stock. That figure would require capitalization of earnings of about forty-eight times in order to make the exercise of the option advantageous to its owner. From 1931 to the date of the Commission decision the highest market price on the common had been 6⅛, so that the call could have no value unless the stock rose to nearly five times that top figure. The market price of the common shares which obtained around the time of the said decision would have to increase from nine to ten times to give value to the call. There is no disagreement with the Commission's judgment that Commonwealth earnings included the savings from refunding operations and that there is no likelihood of any further real savings through refinancing. With this in mind, it is important to note that on the Commission's compilations, the Commonwealth subsidiaries as of the close of the Commission hearing were earning 6.6% upon their rate base. Capitalized at fifteen times earnings,

certainly a liberal expectation, the rate of return would have to increase to 12.5% for the holding company stock to reach a value of $30 a share. Such increase would not be allowed in the strictly regulated public utility industry of which Commonwealth's subsidiaries are a part. The above résumé of the testimony leaves no doubt but that the Commission's decision is well within the substantial evidence rule.

█ Assuming that the Commission had before it conflicting evidence as to value, that part of the evidence on which the Commission based its findings is not destroyed. And with the scope of our review limited, as it is, though we might disagree with the result reached, so long as that result is supported by substantial evidence we are without power to alter it. "As said in National Labor Relations Board v. Link-Belt Co., 311 U.S. 584, 597, 61 S.Ct. 358, 365, 85 L.Ed. 368: 'Congress entrusted the Board, not the courts, with the power to draw inferences from the facts. * * * The Board, like other expert agencies dealing with specialized fields * * * has the function of appraising conflicting and circumstantial evidence, and the weight and credibility of testimony'. The rules quoted are applicable here." Pacific Gas & Electric Co. v. S.E.C., 9 Cir., 127 F.2d 378, 384, 139 F.2d 298, affirmed at 324 U. S. 826, 65 S.Ct. 855, 89 L.Ed. 1394.

Appellant insists that the SEC refused to recognize what she calls the "trading value" or "premium value" of the warrants. This value is based, says appellant, on the perpetual call feature of the warrants, warrant holders having the right "to share in unanticipated earnings which, when they become foreseeable, push the market price of the stock beyond the level of the option price at which the warrants can be exercised."[3]

3. By her own reasoning, appellant demonstrates an inherent weakness in her position. In her argument on this branch of the case she says that "common stock in a continuing enterprise represents the residual chance to make a profit * * *. This opportunity encompasses two distinct elements: (1) anticipated earnings and (2) those earnings which cannot be foreseen but which may nevertheless eventuate." Appellant says " * * * that the warrants, * * *, reflect a portion of the second element of value, * * * that a going concern will realize now unforeseen earnings." Assuming arguendo all that appellant sets forth on this point, it seems clear that the warrant holders should not get what the common stockholders are denied, namely, some return on a going concern basis for

We agree that " * * * the Commission was required to give proper recognition to the value of the perpetual feature of the warrants." In re Electric Power & Light Corp., 2 Cir., 176 F.2d 687, 691. But the SEC cannot, at the expense of the other security holders, place an affirmative valuation upon option warrants which have no chance, so far as the Commission can see, of being exercised at a figure favorable to the warrant holders within the reasonably foreseeable future.[4]

In connection with this phase of the appeal, future inflation stemming from possible results of the international situation and other possibilities are suggested as additional elements of value for the warrants. It is, therefore, contended that the warrants have a tangible worth and that the Commission failed to consider such elements in arriving at its determination. It is said, in effect, that the Commission erred in law by not speculating about any and all contingencies which, within the realm of possibility, might arise and, so arising, increase the common stock value of Commonwealth —increase it to almost five times the highest market price in the last eighteen years and nine to ten times its market price about the time of the Commission decision.

The Commission opinion makes it clear that all pertinent factors in our economy were considered in reaching its decisions regarding the investment value of the various Commonwealth interests. Those conclusions are founded on the record and were arrived at, as we see it, " 'in accordance with legal standards' ". Securities & Exch. Comm. v. Central-Illinois Securities

Corporation, supra, 338 U.S. at page 126, 69 S.Ct. at page 1393. The problem was one peculiarly for the Commission under the Engineers decision, S.E.C. v. Central-Illinois Securities Corporation, supra. It has been resolved by what, we think, was the sound judgment of the Commission in refusing to assume the role of soothsayer and venture a prediction as to a valuation for the options based upon some visionary conception of what the future could bring. The Commission properly discharged its function when it made its best expert determination as to the yearly earnings within the reasonably foreseeable future, and, calculating therefrom and using the other pertinent evidence adduced, finally arrived at its conclusion.

The suggestion is made that by refusing compensation for the options, the Commission has given to one class of security holders what had been sold to another class. Otis & Co. v. S.E.C., 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511, is cited for this but is validly distinguishable from the issue at bar. There, the Commission had determined that the common stock in question had a legitimate investment value, based on the forecast earnings, of a proportion of about 5½% of the corporate assets to the preferred's value of about 94½%. The valuations given the securities were grounded on foreseeable earnings with a reasonable probability of actual realization. Those valuations were upheld on appeal. In this matter, the Commission, on strong believable evidence, has found that the options have no practical value. Any other finding on the particular facts would have

---

profits which are not foreseeable. Under the practice followed by the Commission, the common stock receives a valuation based on foreseeable earnings in an 11(e) proceeding.

If there is no probability of earnings sufficient to boost the price of the stock to the level of the option exercise price, the warrant holder should not receive value based on a mere possibility, or less than that, of future earnings at the expense of the group of stockholders entitled to that value. If, at the time of the simplification proceeding, the once unanticipated profits, (sufficient to boost the price of the common stock to the exercise price) can, with some degree of

probability, be seen in the reasonably foreseeable future, then, and only then, is the warrant holder entitled to receive a positive valuation for his option.

4. In addition, it is possible that the following holding of the Supreme Court might well be construed to be applicable here, and in fairness to all the security owners, would preclude the placement of a positive value on the warrants. In the Otis case the Supreme Court held that pre-existing contract provisions which produce results at variance with a legislative policy, which was not foreseeable when the contract was made, cannot be permitted to operate.

been sheer conjecture based on an arbitrary assumption which would be quite contrary to the rationale of the Otis and Engineers cases.

The Commission rightly concedes that under certain facts an option warrant can have a recognizable value, as in the Electric Power & Light Corp. case—S.E.C. 1949, H.C.A. Release #8889, approved as In re Electric Power & Light Corp., supra, where " * * * there is the probability of the market price of Electric's common stock exceeding the exercise price of the warrant within the foreseeable future" but that is not the situation before us, where the Commission had no sound foundation from either the figures or testimony on which to make that kind of estimate.

It is said that the Commission should have been governed solely by what is asserted to have been their market value in determining the worth of the warrants. In support of this a chart is offered covering the years from 1931 to 1948. This shows that the annual mean prices of the common stock and of the options have a ratio of approximately eight to one. Appellant contends that the Commission must allow participation by the warrant holders in that proportion. We disagree. Were the proportionate table submitted by appellant a far more accurate gauge of market value than it is, it would still be only some evidence of going business value and in no wise controlling. Such evidence is only remotely connected, if at all, with a determination of the going business value of an option warrant, which is the test laid down by the Otis and Engineers opinions. The Commission had before it evidence, which it was entitled to accept, that the possibility of future earnings of Commonwealth sufficient to establish value in the warrants was extremely remote. That evidence is not eliminated or necessarily rendered less credible, simply because there was testimony from which some value could be attributed to the stock. At any rate, we think the option prices during the years covered represent, to a large extent, out and out

market gambling, plus (since the existence of the Commission and its consideration of this case) deliberate speculation as to what the Commission's course would be in connection with the option warrants in question.[5]

The same market value evidence regarding the warrants upon which appellant relies was, of course, before the Commission. The circumstance that it was not referred to in the Commission opinion is no indication that it was ignored. What appellant is really complaining about is the Commission's non-acceptance of it. It follows that there is no reason for remanding this matter to the Commission for the taking of additional evidence on market value of the warrants.

The Second Circuit decision in Securities & Exch. Comm. v. Leventritt, 179 F.2d 615, involving the reorganization of the Niagara Hudson Power Corporation, agrees that where the Commission's holding is supported by substantial evidence and was arrived at in accordance with legal standards, it must be affirmed. But in that opinion the Court found that the record contained nothing to sustain the Commission decision that the Niagara options were valueless. We take the view, already expressed, that the record in the case before us contained abundant evidence to support the Commission's decision. In reaching this conclusion, we are not unaware of the similarities in the two cases.

On the evidence, the Commission properly held that the Commonwealth option warrants had "no recognizable value". Applying the "fair and equitable" test, it found that the warrants were not entitled to any participation in the reorganization of Commonwealth. In so deciding, we think that the Commission was within its statutory authority and that the District Court correctly approved its action.

The judgment of the District Court will be affirmed.

Judge HASTIE concurs in the result.

5. In 1942, in simplification proceedings, the Commission had directed that the warrants be eliminated from Commonwealth's corporate structure and this was upheld by us in Commonwealth & Southern Corporation v. S. E. C., 3 Cir., 134 F.2d 747.