**In re NORTH WEST UTILITIES CO. et al.**
**Civil Action No. 1089.**

District Court, D. Delaware.
Feb. 19, 1948.

Myron S. Isaacs, Howard C. H. Williamson, and Walter Glass, all of Philadelphia, Pa., for Securities and Exchange Commission.

Max Swiren, Ralph D. Stevenson, and Herbert H. Nexon (of Swiren, Heineman & Antonow), all of Chicago, Ill., for Middle West Corporation and North West Utilities Company.

Stephen S. Bernstein and Henry Cohen (of Cohen, Bingham & Stone), both of New York City, for Holders of 7% Preferred Stock of North West Utilities Company.

Stewart Lynch (of Lynch & Herrmann), of Wilmington, Del., and Alan J. Altheimer and Joseph J. Strasburger (of Mayer, Altheimer & Kabacker), both of Chicago, Ill., for 7% Prior Lien Cumulative Preferred Stockholders of North West Utilities Co.

LEAHY, District Judge.

This is an application of the Securities and Exchange Commission under §§ 11(e) and 18(f) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. §§ 79k(e), 79r(f). North West Utilities Company is a registered holding company and a subsidiary of Middle West Corporation. The remaining subsidiary is Wisconsin Power and Light Company. North West owns 98.4 per cent of Wisconsin's outstanding common stock.

The issue raised is the fairness of the plan to North West's stockholders. Its capital structure consists of three classes of stock: (1) a 7% Prior Lien Cumulative Preferred; (2) a cumulative preferred stock in two series, a 7% Series and a $6 Series; and (3) common stock. Middle West owns approximately 60% of the 7% Prior Lien stock, 35% of the 7% Preferred, all of the $6 Preferred and all of the common. The interests concerned are the public holders of the 7% Prior Lien stock, 7% Preferred stock and Middle West. Under the plan filed with the Commission, 10½ shares of common stock of Wisconsin were to be exchanged for each share of Prior Lien stock and 10 shares for each 7% Preferred. The plan as amended at the suggestion of the Commission increases the Prior Lien stock from 10½ to 11½ shares of Wisconsin common plus a certain dividend arrearage.

Objections come from a group of Prior Lien stockholders who claim an insufficient allocation and 7% Preferred stockholders who claim the allocation of 10 shares of Wisconsin common is not enough; hence, they argue, the plan is unfair. The error charged is that the Commission failed to give proper consideration to a subordination of Middle West's holdings in North West. Three claims were made against Middle West. First, it was charged that Middle West Utilities Company (a predecessor corporation) mismanaged North West and caused it to pay some $2,550,000 illegally in common stock dividends to Middle West Utilities from 1926 to 1931; second, it was charged illegal commissions were paid to Middle West Utilities in the approximate amount of $372,000 in connection with the sale of North West securities. Middle West Utilities was placed in receivership in 1932, went into bankruptcy in 1934, and was succeeded by Middle West in 1935, pursuant to a plan of reorganization under the Bankruptcy Act, 11 U.S.C.A.

§ 1 et seq.; third, a claim is made that from 1936 to 1941 Middle West carried out an unlawful program of purchasing 7% Prior Lien stock and 7% Preferred stock of North West at substantial discounts.

1. I have examined the plan and affirmatively find it fair and equitable. In the exercise of my independent judgment I adopt· the findings and conclusions of the Securities and Exchange Commission. In its appraisal it examined carefully the potential rights of each group of security holders in relation to Wisconsin's earnings. Until recently those earnings were weak; but in 1946 a dramatic improvement occurred. After considering estimates of the experts and weighing all the factors of Wisconsin's prospects, the Commission concluded that a reasonable forecast of average annual earnings would be $2,310,000. No attempt was made to determine the current market value of Wisconsin common or for a long-term investment value; but it was noted that as to long-term investment value times-earnings factors of 9.7 to 10.1 times clearly justified an allocation of 11½ shares of Wisconsin common to the Prior Lien stock.

2. The Commission manifestly considered in detail the three claims raised in support of subordination and it gave, I think, adequate weight to those claims in arriving at its conclusions as to what was fair and equitable. In deciding that the Prior Lien stock was entitled to 11½ shares of Wisconsin common, it analyzed and discussed each of the claims and noted all the latent contingencies. The Commission recognized as everyone must that the claims raised complex issues both as to validity and rank. The best that would be accomplished as to a proposed settlement of those claims was an offer by the parent to the public security holders of the subsidiary. See In re Illinois Power Co., D.C.Del., 74 F.Supp. 317; In re United Gas Corp., D.C. Del., 58 F.Supp. 501; Judge Biggs for this court In the Matter of Midland United Co., D.C.Del., 58 F.Supp. 667; and Judge Goodrich in Ladd v. Brickley, 1 Cir., 158 F.2d 212, certiorari denied 330 U.S. 819, 67 S.Ct. 675. The Commission found the offer adequate as to the 7% Preferred, inadequate to the Prior Lien stockholders;

and thus raised the allocation from 10½ to 11½ shares of Wisconsin by approving the plan as amended. As I am in entire agreement with the Findings and Opinion of the Commission (Holding Company Act Release No. 7905), an order of approval may be submitted.