**In re COMMUNITY GAS & POWER CO. et al.**

Nos. 9439, 9441, 9458.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 9, 1947.

Decided May 3, 1948.
Certiorari Denied June 14, 1948.
See 68 S.Ct. 1516.

Melber Chambers, Percival E. Jackson and Solomon E. Star, all of· New York City (Edward H. Spencer, of New York City, George S. Munson, of Philadelphia, Pa., Theodore N. Tarlau and Sage, Gray, Todd & Sims, all of New York City, Townsend, Elliott & Munson, of Philadelphia, Pa., and McManus & Ernst, of New York City, on the brief), for appellants.

Myron S. Isaacs, of Washington, D.C. (Roger S. Foster and Aaron Levy, both of Washington, D.C., on the brief), for Securities and Exchange Commission.

Prescott R. Andrews, of New York City (Humes, Smith & Andrews, and Albridge C. Smith, both of New York City, on the brief), for Community Gas & Power Co. and American Gas & Power Co.

John C. Benson, of Minneapolis, Minn. (Nichols, Mullin & Farnand, Faegre & Benson, Gerald T. Mullin, Chester L. Nichols, P. L. Farnand, J. B. Faegre John F. Bonner, City Atty., and Carsten L. Jacobson, Asst. City Atty., all of Minneapolis, Minn., on the brief), for Minneapolis Gas Light Co.

Before BIGGS, ALBERT LEE STEPHENS and MARIS, Circuit Judges.

MARIS, Circuit Judge.

Community Gas and Power Company and its subsidiary, American Gas· and Power Company, are public utility holding companies registered under the Public Utility Holding Company Act of 1935.[1] Prior to 1943 American had seven operating gas subsidiaries. On July 2, 1943 the Securities and Exchange Commission after extended hearings entered an order directing, inter alia, that Community and American take certain specified steps to comply with the integration and simplification provisions of Section 11(b) of the act. Pursuant to Section 11(b) (1) American was directed to dispose of all of its operating subsidiaries except Minneapolis Gas Light Company. Pursuant to Section 11(b) (2) American was directed to change its existing capital structure, consisting of secured debentures,

[1] 15 U.S.C.A. § 79 et seq.

indebtedness owed to subsidiary companies and common stock, into a capital structure consisting solely of a single class of common stock. The order required that Community be liquidated and dissolved.

Community and American had previously filed a plan of reorganization which did not comply with the Commission's order of July 2, 1943. Following that order the companies filed amendments which were designed to effectuate compliance with the act and with the Commission's order. The amended plan proposed a one-stock reorganization of American and the distribution of the new stock among the holders of the secured debentures and common stock of American, the sale of American's operating subsidiaries other than Minneapolis Gas Light and the payment of the bulk of the sales proceeds to Minneapolis Gas Light. American would still own all of the common stock of Minneapolis Gas Light and would have no other operating subsidiaries. The plan proposed that American would then acquire the assets and franchises of Minneapolis Gas Light and become an operating gas company.

It appears that at the present time Community's only substantial asset consists of 18.06% of the common stock of American. American's principal assets consist of all of the common stock of Minneapolis Gas Light and $3,411,887 in cash representing the proceeds of the sale of its interests in its other subsidiaries. This cash together with the common stock of Minneapolis Gas Light is held by the New York Trust Company as trustee under the debenture agreement to secure American's outstanding debentures in the principal amount of $10,328,000 on which conditional interest of $2,012,904 had accrued at July 31, 1945. In addition to the debentures American has outstanding certificates of indebtedness in the amount of $1,692,305, also 189,637½ shares of common stock, and warrants to purchase 40,000 shares of common stock at $5 per share. One of the certificates of indebtedness, amounting to $1,615,123 is held by Minneapolis Gas Light and the other amounting to $77,182 by Jacksonville Gas Company, a former subsidiary of American.

The amended plan of reorganization further provides for the liquidation and dissolution of Community and in substance for the merger of Minneapolis Gas Light into American. In addition to its common stock, all owned by American, Minneapolis Gas Light presently has outstanding $11,-772,000 principal amount of first mortgage bonds and $2,256,700 par value of preferred stock. Under the plan American will transfer $3,334,705 of the cash now held by the debenture trustee to Minneapolis Gas Light of which $1,615,123 is to be in payment of American's certificate of indebtedness which Minneapolis Gas Light holds and the balance of $1,719,582 is to be a capital contribution. Upon receipt of this cash Minneapolis Gas Light will retire $2,772,-000 of its first mortgage bonds. Minneapolis Gas Light will then transfer all its assets and franchises to American which will assume the remaining $9,000,000 of the first mortgage bonds, will change its name to Minneapolis Gas Company and will thereby become an operating gas utility company. The new company will issue, share for share, its preferred stock to the preferred stockholders of the old Minneapolis Gas Light Company. It will also issue its new common stock in the amount of 1,090,382.16 shares, of which American's present debentureholders will receive 80.-16% and the holders of its present common stock and warrants 19.84%.

Hearings were held by the Commission upon the plan as amended and on April 10, 1946 the Commission entered an order approving the plan and thereupon made application to the district court for the district of Delaware for its enforcement pursuant to Section 11(e) and 18(f) of the act. Consideration by the court was postponed, however, and the Commission resumed its hearings on the plan when the City of Minneapolis, whose approval of certain transactions was an express condition of the plan, withdrew the consent it had previously given. At the reconvened hearings before the Commission an amendment to the plan proposing certain accounting changes was submitted. The record was brought up to date and the objections which were subsequently asserted in the district court and which are now asserted here were considered by the Commission. By supplemental findings and opinion and

order dated January 14, 1947 the Commission approved the plan as amended. Subsequently the Commission's petition for the approval and enforcement of the plan was heard by the district court which adopted the findings of the Commission and entered an order approving the plan and directing its enforcement. D.C., 71 F.Supp. 171. The present appeals by certain individual debentureholders, by the debentureholders' committee and by the debenture trustee followed.

In this court the principal contention of the appellants is that the Public Utility Holding Company Act does not authorize the approval or enforcement of a plan, such as is here involved, which compels secured creditors to accept in satisfaction of their claims a portion only of the property which has been pledged for their benefit. The contention is that the plan deprives the debentureholders of their right to have all of the pledged stock of Minneapolis Gas Light Company applied to the satisfaction of their claims. We have given full consideration to this contention but conclude that it is without merit.

█ The purposes of the Public Utility Holding Company Act and the power which it confers upon the Commission generally to reorganize holding companies in order to simplify their structure and otherwise to bring them into compliance with Section 11(b) of the act have been the subject of much discussion in recent cases[2] and we need not go over the same ground here. It is only necessary for us to recall at this point that it is now settled that securityholders having priorities and preferential rights in a public utility holding company may in a reorganization called for by the act be compelled to accept the equitable equivalent of their claims in other securities in the continuing enterprise. If the equivalent thus tendered them includes fair compensation for their senior and preferential rights they may be required to surrender those rights.[3] This principle has been applied not only to preferred stockholders[4] but to creditors as well.[5] This is basically because of the fact that a reorganization under the Public Utility Holding Company Act normally involves the reorganization of a going solvent business which is destined to continue rather than the liquidation and winding up of an enterprise which is terminating. Accordingly securityholders who have invested in the enterprise whose capital structure violates the act may properly be required to accept the equitable equivalent of their investment in the form of new securities in the simplified structure

---

[2] Commonwealth & Southern Corp. v. Securities & Exch. Comm., 3 Cir., 1943, 134 F.2d 747; Otis & Co. v. S. E. C., 1945, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; In re Standard Gas & Electric Co., 3 Cir., 1945, 151 F.2d 326, cert. den. Guaranty Trust Co. of N. Y. v. S. E. C., 327 U.S. 796, 66 S.Ct. 820, 90 L.Ed. 1022; North American Co. v. S. E. C., 1946, 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945; American Power & L. Co. v. S. E. C., 1946, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103.

[3] Compare Consolidated Rock Co. v. DuBois, 1941, 312 U.S. 510, 61 S.Ct. 675, 686, 85 L.Ed. 982, in which the court said:

"Thus it is plain that while creditors may be given inferior grades of securities, their 'superior rights' must be recognized. Clearly, those prior rights are not recognized, in cases where stockholders are participating in the plan, if creditors are given only a face amount of inferior securities equal to the face amount of their claims. They must receive, in addition, compensation for the senior rights which they are to surrender * * *.

"Practical adjustments, rather than a rigid formula, are necessary. * * * But whether in case of a solvent company the creditors should be made whole for the change in or loss of their seniority by an increased participation in assets, in earnings or in control, or in any combination thereof, will be dependent on the torts and requirements of each case. * * * So long as they receive full compensatory treatment and so long as each group shares in the securities of the whole enterprise on an equitable basis, the requirements of 'fair and equitable' are satisfied." pages 528-530, 61 S.Ct. at page 686.

[4] Otis & Co. v. S. E. C., 1945, 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511.

[5] In re Standard Gas & Electric Co., 3 Cir., 1945, 151 F.2d 326, cert. den. Guaranty Trust Co. of N. Y. v. S. E. C., 327 U.S. 796, 66 S.Ct. 820, 90 L.Ed 1022; Compare Consolidated Rock Co v. DuBois, 1941, 312 U.S. 510, 61 S.Ct. 675, 85 L.Ed. 982.

of the continuing enterprise instead of the payments to which they would have been entitled if the enterprise had been discontinued and liquidated and its affairs wound up.

We think that the sweep of this principle extends to the present case. The only distinction to which the appellants can point is that here the creditors are secured by the pledge of the Minneapolis Gas Light common stock but are not receiving in the reorganization all of the pledged stock. But once it is conceded that a creditor in such a reorganization may be denied payment of his claim in cash and may be required instead to accept its equitable equivalent in securities in the continuing enterprise there is no basis for holding that the existence of a pledge of property as security for the creditor's claim gives him any different or greater rights. For the purpose of the pledge of property in such circumstances is merely to assure the payment of the creditor's claim. If the claim is lawfully satisfied by the delivery to the creditor of its equitable equivalent in other securities the function of the pledge has been fulfilled. A creditor has no right to pledge property as such. He has recourse to it only if necessary to secure for him the satisfaction of his claim.

Applying these principles to the present case we conclude that if, as the Commission finds, 80.16% of the common stock of Minneapolis Gas Light Company is the equitable equivalent of the claims of American's debentureholders there is no basis for those debentureholders to assert that they are also entitled to the remaining 19.84% of the stock merely because all of the stock had been pledged to secure their claims. The situation is the same in principle as though the Minneapolis Gas Light common stock had been sold to satisfy the debentureholders' claims and 80.16% of the cash realized from the sale was sufficient to pay their claims in full. Obviously under such circumstances the debentureholders would have no claim upon the remaining 19.84% of the proceeds.

We turn then to the other contentions of the appellants. One of these is that the plan of reorganization approved by the Commission and the district court in this case is not necessary and appropriate to effectuate the purposes of the act. This contention likewise we find to be without merit. After extensive hearings and upon comprehensive findings analyzing the history, capital structures and operations of Community, American, and the subsidiaries of the latter, the Commission in its findings, opinion and order of July 2, 1943 reached the conclusion that the elimination of debt from American's capital structure and the transformation of that structure into a single class of common stock was necessary and appropriate to comply with the simplification requirements of Section 11(b) of the act. The act commits the determination of this question to the Commission and its conclusion is entitled to the greatest weight.[6] As a matter of fact no review of this determination of the Commission was sought by anyone although Section 24(a) of the act authorized such review. The time allowed for such review has long since expired.

Where, as here, the company pursuant to Section 11(e) of the act proposes a plan of reorganization in accord with the Commission's order directing compliance with the act, the Commission is charged with the duty of determining whether the plan is necessary and appropriate to effectuate the provisions of the act. Here the Commission made such a determination and its findings and conclusions in this regard were approved and adopted by the district court. The appellants do not attack the Commission's findings of fact. We think they furnish adequate support for the conclusion to which both the Commission and district court came that the plan is necessary and appropriate to carry out the mandate of the statute. Under these circumstances we may not substitute our judgment for that of the Commission and district court.[7]

6 American Power & L. Co. v. S. E. C., 1946, 329 U.S. 90, 112, 67 S.Ct. 133, 91 L.Ed. 103.

7 In re Standard Gas & Electric Co., 3 Cir., 1945, 151 F.2d 326, cert. den. Guaranty Trust Co. of N. Y. v. S. E. C., 327 U.S. 796, 66 S.Ct. 820, 90 L.Ed. 1022.

Indeed, the only contention which the appellants seriously advance in this connection is that the plan may not properly be held to be necessary since it deprives the debentureholders of their secured position, whereas, as they contend, the objectives of the statute could be attained by a plan which permits the debentureholders to retain the benefit of their security. As we have pointed out, however, the Commission has concluded upon consideration of all of the facts that the elimination of debt from American's capital structure is necessary to accomplish the statutory mandate to simplify that structure. As has been said, the Commission was empowered to draw this conclusion from the facts which it found. It effectually disposes of the appellants' contention in this regard.

Finally the appellants contend that the plan as approved is not fair and equitable to the debentureholders. They point to a number of factors which in their view lead to the conclusion that the allocation of only 80.16% of the Minneapolis Gas Light stock to the debentureholders is so inadequate as not to afford them the equitable equivalent of their claims. The Commission, on the other hand, urges that under the plan the debentureholders will receive a share in the prospective earnings, as estimated in the findings, which will be very substantially in excess of their present total claim to fixed and contingent income. It points out that the funds to pay the interest on the debentures now come solely from the Minneapolis Gas Light stock and that this stock, 80.16% of which they are to receive, together with the cash held by the debenture trustee and which is presently available for the purchase of additional Minneapolis Gas Light stock, constitute the sole financial base upon which the debentures rest.

Here again the Commission upon a full consideration of all the facts reached the conclusion that the stock to be distributed to the debentureholders represented the equitable equivalent of their debentures. The district court in the exercise of its independent judgment [8] arrived at the same conclusion. In view of the concurrent findings and conclusions of the Commission and the district court, the members of both of which have become specialists in this field,[9] we would hesitate to reverse the district court's order except for the clearest error. Nonetheless we have examined the findings and conclusions of the Commission and court with care. It would serve no useful purpose to discuss them in detail here. Suffice it to say that we find no basis whatever for suggesting that they disclose error of any kind. On the contrary the conclusion that the plan is fair and equitable to the debentureholders finds ample support in the facts as found.

The order of the district court will be affirmed.

---

[8] In re Engineers Public Service Co., 3 Cir., 1948, 168 F.2d 722.

[9] See In re Engineers Public Service Co., 3 Cir., 1948, 168 F.2d 722.