In the Matter of THE UNITED
CORPORATION.
Civ. No. 1650.

United States District Court,
D. Delaware, Wilmington.
Jan. 17, 1955.

William S. Potter (of Berl, Potter & Anderson), of Wilmington, Del., and Richard Joyce Smith (of Whitman, Ransom & Coulson), and William T. Farley, New York City, for The United Corp.

Thomas Reath, John Mulford (of Drinker, Biddle & Reath), of Philadelphia, Pa., and M. Quinn Shaughnessy, of Washington, D. C., for Alfred A. Biddle, a warrant holder, and for the General Protective Committee for the Holders of Option Warrants.

Carlos L. Israels (of Berlack, Israels & Liberman), New York City, for Herbert M. Diamond, et al., other warrant holders.

Myron S. Isaacs, Ellwood L. Englander and William R. Nowlin, Washington, D. C., for the Securities and Exchange Commission.

Randolph Phillips, New York City, pro se, and Joseph B. Hyman, of Alexandria, Va., for Randolph Phillips, as Attorney-in-Fact for stockholders of The United Corporation, and for Edward R. Downing.

LEAHY, Chief Judge.

This is a suit by the Securities and Exchange Commission for approval and enforcement of a voluntary plan filed by the United Corporation under § 11(e) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq., and approved by the SEC in 1951 which, among other things, cancels all United's outstanding warrants to purchase 3,732,059 shares of its own common stock, with no compensation to the warrant holders. United's transformation into a registered investment company will also be discussed. The Plan, as amended, was approved by order of the SEC on June 26, 1951. The only provisions of the Plan before the court for enforcement and approval are those requiring cancellations of the outstanding option warrants to purchase common stock of United, and amending United's charter and by-laws so as to permit cumulative voting and to increase the quorum at stockholders' meetings from 25% to 50% of the outstanding stock. Hearings on the Plan

before the SEC took eight months. The transcript comprised 4,595 pages together with voluminous exhibits. The whole record has been introduced here.

On June 15, 1951, the SEC filed its Opinion and Findings approving the Plan, subject to certain suggested modifications. After United filed appropriate amendments, the SEC's order of final approval was entered on June 26, 1951.

The proceedings began with the filing of a voluntary plan with the SEC on November 6, 1949, by United under § 11(e). On August 14, 1943, the SEC had directed United to cease being a holding company and to change its capital structure to one class of stock.[1] At that time United had outstanding preference stock, common stock and warrants. United, with approval, had by November 15, 1949, retired its preference stock and disposed of all but two of its former subsidiaries. The next day United filed a plan which provided it would cease to be a holding company but would continue as an investment company. The plan provided for new 5-year warrants to purchase common stock at $7 per share, and to be issued in exchange for outstanding warrants at the rate of 1 new warrant for each 5 old ones. On June 13, 1950, United filed an amendment to the plan[2] which provided for the cancellation of all outstanding warrants without compensation to the holders. This was at the suggestion of the staff of the SEC and apparently at this time United did not take the position such a step was necessary or fair.

In July 1950, the General Protective Committee for the holders of option warrants was formed. It appeared before the hearings of the SEC on the forfeiture of the warrants, claimed the action unfair and unnecessary and introduced its evidence to that effect.

The SEC found presence of the warrants in United's structure constituted a corporate complexity which had to be eliminated under § 11(b) (2) and cancellation of the warrants would complete simplification of United's corporate structure. The SEC noted the right to buy common stock at $27.50 a share applies to the common stock "as such stock may be constituted at the time of purchase * * * irrespective of every change * * * by way of payment of stock dividends, sale, exchange or other distribution of any class of stock of the Company." The SEC discussed standards of valuation approved by the courts[3] and the expert opinion evidence submitted before the Commission both by United and the Committee for the option warrant holders. Assets and earnings of United's portfolio securities and the market history of United's common stock were considered. The Committee's documentary proofs showing changes in net assets and in common stock market prices of closed-end management investment companies, were reviewed. The SEC stated it was unable to find any reasonable expectation United's earnings and assets in the foreseeable future would be such its common stock would increase so as to give the warrants a value whether the option price were to remain at $27.50 or be reduced to $19.25 per share.[4] The SEC concluded the warrant holders "are not entitled, under the standards of fairness and equity, to any participation in the reorganization of United"; the continuance of the warrants "representing as they do such an extremely tenuous right, would be inherently deceptive to investors and perpetuate in the corporate

1. The United Corporation, 13 S.E.C. 854, 877, 899.

2. The Plan filed November 16, 1949, as amended on June 13, 1950, is referred to here as the "Plan".

3. Niagara Hudson Power Corp. v. Leventritt, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed.

319, reversing S. E. C. v. Leventritt, 2 Cir., 179 F.2d 615; In re Commonwealth & Southern Corp., 3 Cir., 184 F.2d 81, affirming, D.C.Del., 84 F.Supp. 809, certiorari denied, 340 U.S. 929, 71 S.Ct. 489, 95 L.Ed. 670.

4. The price difference will be discussed infra.

structure useless and unnecessary complexities, in contravention of the requirements of Section 11(b) (2)"; and "elimination of the option warrants as proposed by the plan is appropriate under the standards of the Act." The SEC's approval of the cancellation of option warrants (and of the proposed amendments to the charter and by-laws) was conditional, pursuant to United's request, upon an order of approval and enforcement by an appropriate District Court.

On August 23, 1951, before any application to a District Court for enforcement had been made, Randolph Phillips, et al., stockholders of United, appealed under § 24(a) to the Court of Appeals for the District of Columbia from the SEC's order approving the Plan. On March 31, 1953, the Court affirmed the SEC's order,[5] and on January 4, 1954, it was reversed in part by the Supreme Court,[6] which held: the Court of Appeals had jurisdiction to review the order of the Commission approving so much of the Plan as did not call for enforcement by a District Court, i. e., United's continuance as an investment company. It denied a petition by Phillips for certiorari to this portion of the decision;[7] but decided the Court of Appeals had no jurisdiction to review the Commission approval of those parts of the Plan—cancellation of warrants—which required District Court enforcement.

Phillips who had participated in the proceedings before the SEC, was a party in the § 24(a) appeal, took a position before the Court of Appeals it had jurisdiction to review all aspects of the Plan including all those which the SEC had expressly made subject to review only by the enforcement District Court.

The Committee had been permitted to intervene in the review proceedings before the Court of Appeals over the objections of the SEC and United and was heard in opposition to the proposed cancellation of the warrants. The Court of Appeals affirmed on the merits the opinion of the SEC and held "the findings of the Commission with respect to the warrants are supported by evidence which we regard as substantial."[8] After referring to Niagara Hudson Power Corp. v. Leventritt, supra, Judge Wilbur K. Miller wrote: "We see no reason to disturb the Commission's findings that the plan of compliance submitted by United, including the provision for eliminating option warrants, is necessary to effectuate the purposes of § 11(b) and is fair and equitable to the persons affected thereby. Having so found, the Commission was under a statutory duty to approve the plan." The Court of Appeals held it had jurisdiction to review the provisions of the Plan which the SEC had made subject to District Court review and enforcement. It thought those provisions, however, should be submitted to a District Court for the purpose of enforcement only but stated, further, the SEC's findings on these matters were supported by substantial evidence within the SEC's administrative discretion.[9] In the meantime, on July 15, 1952, United with SEC approval had sold all its stock in its last subsidiary, South Jersey Gas Company.[10] Since then it has not owned 10% of the voting securities of any public utility company and has not been a holding company or a part of any such system.

5. Downing v. S. E. C., 92 U.S.App.D.C. 172, 203 F.2d 611.

6 General Protective Committee v. S. E. C., 346 U.S. 521, 74 S.Ct. 261, 98 L.Ed. 261.

7. 346 U.S. 930, 74 S.Ct. 319, 98 L.Ed. 422.

8. Downing v. S. E. C., 92 U.S.App.D.C. 172, 203 F.2d 611, 624.

9. Id., 203 F.2d at page 620.

10. The SEC, before it would approve the sale, required United to stipulate it would not in the future by reason of the sale challenge the jurisdiction of the Commission with respect to "whatever action may be necessary to completely effectuate the purpose of Section 11(b) of the Act." The United Corporation, HCAR 349, June 24, 1952, p. 6.

Warrant holders were not parties to the stipulation and would appear not bound by it.

During the § 24(a) review proceedings before the Court of Appeals, the Committee moved twice for leave to adduce additional evidence by way of testimony. That Court granted leave to file the motions but denied leave to adduce additional evidence. The second motion for such leave was filed after United's sale of the South Jersey Gas Corporation stock and on the ground United was no longer a part of a holding company system. This motion was denied in part. On the Committee's petition for rehearing, based on the alleged loss of jurisdiction, it was denied by the Court of Appeals on April 22, 1953. Reversing position, the Committee then petitioned the Supreme Court for certiorari to review the Court of Appeals decision it had jurisdiction to pass upon the merits of the SEC's holding the option warrants should be cancelled. In short, the Committee adopted the position taken by the SEC and United (reaffirmed by them on the pending application for certiorari) that the Court of Appeals was without jurisdiction to review the merits of the provisions of the Plan requiring District Court enforcement. It would appear the Supreme Court held the Court of Appeals had jurisdiction under § 24(a) to review all questions tendered to it, except those relating to cancellation of option warrants and the proposed amendments to the charter and by-laws of United.[11]

The Supreme Court accepted the so-called "split review" procedure; i. e., review of certain provisions of the Plan by the Court of Appeals and review and enforcement in a District Court of the provisions as to cancellation of the option warrants and with respect to the change in the charter and by-laws.[12] The Supreme Court reversed the Court of Appeals in "taking jurisdiction over the provisions of the voluntary plan of reorganization which the Commission in its order made operative on enforcement by the District Court."[13]

On March 1, 1954, the Court of Appeals amended its former judgment and dismissed the petition for review for lack of jurisdiction so far as the SEC's order related to provisions of the Plan operative only on enforcement by a District Court. Then the Committee applied to the SEC to reopen the hearings to adduce additional evidence. Diamond, et al., holders of option warrants, supported the application. The SEC entered a Memorandum Opinion and Order denying the application and found the arguments of the warrant holders were the same as those presented by the Committee in 1951. The SEC found the record included data as to closed-end investment companies covering 1937–49 similar to that offered by the Committee; the increases since 1949 with respect to closed-end companies offered by the Committee and those since 1951 with respect to United were not of a nature to require reconsideration; the Committee's profert of additional opinion evidence was not sufficient to justify reopening the record; the steps taken by United in compliance with the Act had not affected the power to require or the appropriateness of eliminating from United's capital structure the option warrants.

The SEC then filed its application here for enforcement. Both the Committee and Diamond, et al., object to the cancellation of the option warrants. Phillips, et al., likewise raised their several other objections which are discussed infra. Motions to reopen the record were renewed in this court. At the hearing the Committee sought disapproval of the Plan and asked that the option warrants remain outstanding[14] and to remand the case to the SEC to consider a possible reduction in exercise price of the warrants from $27.50 to $19.25 a share of United's

11. General Protective Committee v. S. E. C., 346 U.S. 521, 529, 74 S.Ct. 261, 98 L.Ed. 261.

12. Id., 346 U.S. at page 529, 74 S.Ct. 261.

13. Id., 346 U.S. at page 536, 74 S.Ct. at page 270.

14. District Court Record 1.

common stock.[15] Diamond asked for the case to be returned to the SEC for further proceedings to fix a value for the warrants.[16] The SEC, United and Phillips, et al., argued approval of the provisions of the Plan for cancellation of the option warrants as undue complexity having no present value or any in the foreseeable future.

### United Supports The Application of The SEC

United claims the findings of the SEC on elimination of the option warrants are supported by substantial evidence and are in accordance with legal standards. United rests its case on these elements:

1. William M. Hickey, President of United and a recognized investment analyst, testified there was no possibility in the foreseeable future of United's common stock reaching $27.50 per share, the exercise price of the warrants. Alan W. Wallace, Vice-president of Moody's Investor's Service, after an independent study, corroborated Hickey.

2. The testimony of these two experts was limited by the expert opinion of Charles Tatham, Jr., which consisted of statistical comparisons of securities of other companies. Tatham's views were attacked by United because based on conjecture and speculative assumptions, and because the SEC's determinations are supported by a record which shows careful consideration given by the Commission to the status of the option warrants and their lack of any intrinsic value.

3. The SEC's decision the warrants should be cancelled was arrived at, United argues, in accordance with legal standards announced in Niagara Hudson Power Corp. v. Leventritt, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed. 319; In re Commonwealth & Southern Corporation, 3 Cir., 184 F.2d 81, certiorari denied, 340 U.S. 929, 71 S.Ct. 489, 95 L.Ed. 670; and in the language of the Supreme Court in Securities and Exchange Commission v. Central-Illinois Corp., 338 U.S. 96, 69 S. Ct. 1377, 93 L.Ed. 1836, this determination of the SEC was "made in an area in which Congress had delegated" such decisions and may not be disturbed.

### Diamond, Et Al., Biddle and The General Protective Committee For Option Warrant Holders Oppose The Application of The SEC

Diamond, et al., Biddle and the Committee argue the Plan provided United cease to be a holding company and the inclusion therefor of a provision forfeiting the option warrants was unauthorized and unenforceable. These objectors' first two attacks are these:

#### I

1. Requirements of § 11 are each holding company must (i) confine its operations to a single public utility system, (ii) not have an unfair distribution of voting power, and (iii) not have unnecessary complications to its capital structure. Since the purpose of the Act was to regulate holding companies, a company can effect compliance with § 11 in either of two ways: (a) it may effect internal reforms with respect to integration of properties, voting power, and undue system complications, necessary to bring its system into compliance with prescribed statutory standards, so it may continue as a holding company subject to the regulation provided in the Act for such companies; or (b) it may reduce its security holdings of public utility operating companies to less than 10% and cease to be a holding company and thus put itself outside the field subject to regulation by the Act. In short, these objectors argue any holding company can effect compliance with § 11 by ceasing to be a holding company and thereafter cease to be subject to § 11; or, as pointed out by the Supreme Court in reviewing the Plan sub judice:

"The Congress contemplated that under this Act some holding companies might satisfy the requirements of § 11 by divesting themselves of control and converting

15. R. 85–6.

16. R. 103.

themselves into investment companies." [17]

2. If compliance is had under the Act by a subject ceasing to be a holding company, then the objectors argue once such a company elects with SEC approval to adopt this method of compliance there is nothing in the Act which authorizes a plan to rearrange rights of security holders, and cancel an entire class of securities without the consent of such holders. In short, if a provision in any plan is not authorized by the Act, the SEC has no power to require it to be filed or to approve it or to request a District Court to enforce it.

3. This is for the reason in the case of holding companies who were to keep their corporate identity, Congress determined by the Act the public interest required the overriding of contract rights of security holders; but, there is nothing in the Act to indicate any intent to affect contract rights in cases where the subject has surrendered its right to be a holding company. From this, objectors point out in such case the regulation of corporate structures is exclusively for state law and the SEC was never given mandate by the Act to override the corporation laws of the several states except in the case of companies which continue as interstate holding companies. Applicability of these principles to the present facts makes it clear that in 1943 United, with SEC approval, decided to comply with the Act by ceasing to be a holding company. The plan filed November 16, 1949, provided this would be done. The last required step was on July 15, 1952, when United disposed of its last subsidiary and ceased to be a holding company.

The contention is there is no public policy which requires regulation of a former holding company which is now an investment company, to cancel without compensation warrants issued and acquired in good faith and for value 25 years ago and which have been outstanding and widely traded in on the New York Curb Exchange with the approval of the SEC.[18] So, it is argued, United had no right to file with the SEC a plan cancelling the warrants, for such destruction of contract rights is not sanctioned by the Act, should never have been approved by the SEC and should not be approved by the enforcement court.

## II.

4. Moreover, these objectors claim cancellation of the warrants is not neces-

17. General Protective Committee v. S. E. C., 346 U.S. 521, 530, 74 S.Ct. 261, 266, 98 L.Ed. 261.

18. This appears to be the first case where a plan provides a holding company shall cease to exist with the question presented whether it is also necessary for it in addition to comply with other provisions of § 11 of the Act. The problem has not reached any court probably because it was not until the Supreme Court passed on United's Plan in this case on January 4, 1954, that any court had said a holding company could satisfy the requirements of § 11(b) of the Act by disposing of its subsidiaries and converting itself into an investment company.

The SEC has dealt with the question on the administrative level in several cases:
a. Standard Oil Company (N.J.), 10 S. E.C. 1122, 14 S.E.C. 342, 15 S.E.C. 373. The plan provided, filed under § 11(e), Standard would dispose of its securities of public utility subsidiaries by distribution of their stock to its own shareholders thus making it no longer a holding company. It was never proposed or required to redistribute its voting power or simplify its system structure as it would have been required by § 11(b) (2) if it had remained a holding company.

b. Public Service Corporation of New Jersey, 27 S.E.C. 682 (enforced D.C.N.J., 1948). Plan under § 11(e) provided for elimination of a public utility operating company without such compliance with the integration provisions of § 11(b) (1) as would have been necessary if the operating company had remained a part of the holding company system.

United Gas Improvement Co., HCAR 11, 495 (1952), p. 9. Same as Public Service case, supra, the SEC saying: "* * * If the Plan is approved and consummated, UGI will consist of a single operating company and there will remain no holding company system. Accordingly, the effect of the merger will make it unnecessary to apply the literal standards of Section 11(b) (1) to the new merged company."

sary as they do not create the kind of complexity which the Act seeks to remove. The question is whether at the present time or in 1951 (when the SEC approved the Plan) the warrants unnecessarily or unduly complicated the holding company system structure. In other instances necessary findings under § 11 proceedings have been made as at the present time. In re Standard Gas & Electric Co., D.C.Del., 63 F.Supp. 876; In re Interstate Power Co. Ogden Corp., D.C.Del., 89 F.Supp. 68. The selection of dates may be critical because since July 15, 1952, United is no longer a part of a holding company system. The matter under any view shows little difference, for in 1950 United simply had common stock and warrants outstanding. It had no other stock, bank loans, or funded debt. At that time it had only two direct subsidiaries, Niagara Mohawk Power Corporation and South Jersey Gas Company, both of which have been disposed of. Warrant holders make a strong argument their securities do not constitute a complication within the rules laid down in the cases,[19] for in the instant case unlike other cases United is not to remain a public utility, whose earnings are usually limited to a fixed, conservative rate of return. Such considerations are not applicable to an investment company. From the findings of the SEC and the statements of counsel at oral argument, the emphasis was not that the outstanding warrants would complicate the internal structure of United but the cancellation was in the interest of possible future purchasers; and the existence of warrants should be terminated because they are an undesirable kind of security of uncertain value. But the warrant holders argue there is no statutory authority to cancel their class of securities under the special circumstances of the instant case. As stated, these arguments have force. It is difficult to see how the warrants complicate the former holding company system of United or that forfeiture is "necessary" or "appropriate" to effectuate the provisions of § 11(b).

5. It is claimed the warrants have an investment value and their forfeiture is not fair and equitable to the holders under § 11(e) of the Act. Objectors argue United has failed to meet the burden of proof such forfeiture is "fair and equitable" and the findings of the SEC are not supported by evidence that the forfeiture is fair and equitable to the warrant holders. The Committee claims if the warrants have a present investment value, no plan requiring cancellation could be fair. Niagara Hudson Power Corp. v. Leventritt, 340 U.S. 336, 71 S.

---

19. "The question involved in the present order is merely whether, in the light of the capital structure of Commonwealth's system, the continuance of any preferred stock will so burden and complicate the system in connection with its future financing and other operations as to run afoul of the standards of simplicity which section 11(b) (2) has set." Commonwealth & Southern Corp. v. S. E. C., 3 Cir., 134 F.2d 747, 754.

"Complexity is not a matter to be determined merely by counting the classes of securities outstanding. A corporate structure is unduly and unnecessarily complicated when it prevents the corporation involved from performing its functions." In re Community Power & Light Co., D.C.S.D.N.Y., 33 F.Supp. 901, 914.

"When earnings and assets of subsidiaries are not sufficient to provide for any of the stock of a holding company the considerable degree of security which the public attributes to preferred stock, it may reasonably be thought that the division of the holding company's stock into preferred and common will 'unduly or unnecessarily complicate the structure' of the system." Central & Southwest Utilities Co. v. S. E. C., 78 U.S.App.D.C. 37, 39, 136 F.2d 273, 275.

"The Commission was free to eliminate such securities as these [perpetual warrants to buy common stock, constituting as they did a perpetual right to demand an increase in the common shares of the new company. Such a possible future increase in the capital of a *public utility company* might well be deemed, certainly a needless, and perhaps a disturbing, 'complexity' in its 'structure.'" S. E. C. v. Leventritt, 2 Cir., 179 F.2d 615, 616, reversed on other grounds, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed. 319. (Emphasis added.)

Ct. 341, 95 L.Ed. 319.[20] The concept "foreseeable future" is elastic enough to mean from 15 to 50 years.[21] The record indicates during the course of the administrative proceedings United was willing —believed it fair—to permit the warrants to remain outstanding and the original plan for the issue of new short-term warrants in lieu of the outstanding warrants, was because of the belief of United that the staff of the Commission opposed the continued existence of the old warrants at their exercise price. Thereafter, United amended the Plan providing for complete cancellation of the warrants. In fact, it is stipulated of record the only reason United filed its amendment calling for cancellation was because it believed any provision for warrants in the Plan would be opposed by the staff of the SEC, and United did not desire to litigate this question. The basic findings on fairness of the cancellation of the warrants made by the SEC were:

"The determination of the value of the warrant holder's interest [must be based upon a finding that] the warrants have a recognizable present value in terms of a reasonable expectation that the market value of the common stock will in the foreseeable future exceed the exercise price of the warrants.

\*　\*　\*　\*　\*　\*

"We are not persuaded, however, that these statistics [showing the increase in the value of stocks of other investment companies over the preceding 12 years, as testified to by Mr. Tatham] can be relied on as showing that United's common stock will in the foreseeable future increase in value to the extent necessary to give the warrants a recognizable present value.

\*　\*　\*　\*　\*　\*

" \* \* \* we cannot find that there is a reasonable expectation that United's earnings and assets over the foreseeable future will be such that the market price of its common stock will increase to the extent needed to give the warrants a recognizable value."

6. Warrant holders argue the Commission's findings are inadequate as a matter of law and unsupported by the evidence in the record. Warrant holders

---

**20.** At page 344 of 340 U.S., at page 345 of 71 S.Ct.:
"If there is ground for a reasonable expectation that [the market value of the common stock and the exercise price of the warrants] *may* coincide within the foreseeable future, then the warrants would have an intrinsic and investment value directly related to the common stock. Under those circumstances, we assume no plan of reorganization would be fair or equitable within the meaning of § 11(e) of the Act that did not recognize that value and provide an equitable equivalent for it." (Emphasis added.)

**21.** For example, see:
Southern Colorado Power Co., 14 S.E.C. 115, 146 (1943) enforced D.Colo. (1944), affirmed sub nom. Disman v. S. E. C., 10 Cir., 1945, 147 F.2d 679, certiorari denied 1945, 325 U.S. 863, 65 S.Ct. 1200, 89 L.Ed. 1984 .................. 95 years
The North American Co., HCAR 11,-390, p. 12 (1952), enforced D.Md. (1952) ................ 58 to 74 years
The Middle West Corp., 1947, 27 S.E.C. 195, 231-2 enforced sub nom. In re North West Utilities Co., D.C.Del.1948, 76 F. Supp. 63 .................... 23 years
In re United Light & Power Co., 1943, 13 S.E.C. 1, 17, enforced D.C.Del.1943, 51 F.Supp. 217, 222, affirmed sub nom. In re Securities and Exchange Commission, 3 Cir., 1944, 142 F.2d 411, 417, 420-421, affirmed sub nom. Otis & Co. v. S. E. C., 323 U.S. 624, 632, 65 S.Ct. 483, 89 L.Ed. 511, rehearing denied 1945, 324 U.S. 887, 65 S.Ct. 710, 89 L.Ed. 1436 ..................... 15 years
The exercise price specified in the warrants is $27.50 per share. But, this must be reduced to $19.25 per share by reason of the substantial capital distribution made by United to its stockholders in 1949. The warrants were originally issued in 1929 for $27.50. In 1949, under compulsion of § 11, United made a capital distribution to its stockholders of stock of Niagara Hudson Power Corp., the correct value of which was equal to about 30% of the market value of all assets of United. Fairness to warrant holders requires the original exercise price of $27.-50 be reduced by 30% thereof, or $8.25, to $19.25 per share.

contend it is not enough for the SEC to be "not persuaded" or that it "cannot find" the warrants to have any foreseeable value. The argument is the Commission is under a statutory duty to affirmatively find there is no reasonable basis for the belief the price of the common stock may reach $27.50. The difference, say the warrant holders, between the two approaches is not a matter of semantics; it is a fundamental difference in meaning. The two cases, Niagara Hudson Power Corp. v. Leventritt, 340 U.S. 336, 71 S.Ct. 341; 95 L.Ed. 319, and In re Commonwealth & Southern Corp., D.C.Del., 84 F.Supp. 809, affirmed 3 Cir., 184 F.2d 81, certiorari denied 340 U.S. 929, 71 S.Ct. 489, 95 L.Ed. 670, relied upon by the SEC as justification for forfeiture, are distinguished by the warrant holders. In those cases it is claimed there was sufficient evidence to justify a conclusion the market price of the common stock would not in the foreseeable future reach the exercise price of the warrants, while in the instant case the evidence demonstrates if the market value of United stock follows the present pattern of both United's and the stock of similar investment companies, it will, within the next 15 years, not only reach but exceed the exercise price of the warrants.

7. Diamond, et al., other warrant holders, join with the Committee in urging the application of § 7 of the Administrative Procedure Act, 5 U.S.C.A. § 1006, and contend the burden of proof is upon United to demonstrate cancellation of the warrants is fair. Upon the present record, it is urged the SEC's findings were not in accordance with applicable legal standards and not supported by substantial evidence. In fact, the argument is there is a lack of an affirmative finding of "no recognizable value" in the warrants. Diamond, et al., assert no administrative body can merely state its ultimate finding of fact without indicating each of the factors it considered in reaching that finding. The suggestion is made the Plan should be disapproved and the proceeding remanded to the SEC with the Court outlining to the Commission "the legal and procedural framework within which it must operate, and that that framework rests not only upon the policy of the Act with respect to the type of securities which regulated companies should have outstanding, but equally important upon the necessity for the protection of the property rights, however 'tenuous', of all security holders."

### Phillips-Downing Objections and Proposed Amendments To The Plan

When management proposed at the 1947 annual meeting its plan for transformation into an investment company, Phillips[22] proposed an amendment so as to provide for 1. cumulative voting at all meetings for election of directors; 2. right of any stockholder to withdraw for a limited time his proportionate share of the assets; 3. an increase in the quorum required at stockholders' meetings from 25% to 50% of the voting stock; and 4. consultation by the management with opposition representatives as to other protective provisions. United's management opposed Phillips and was supported by 45% of the stock. On June 13, 1950, however, management admitted provisions Nos. 1, 2 and 3 were "fair and equitable" and "necessary" to effectuate the provisions of § 11(b) of the Act.[23]

22. Randolph Phillips was constituted, at the 1947 Annual Meeting of The United Corporation which voted on the investment company Plan that is the subject of this proceeding, the Attorney-in-Fact and Proxy for 22,081 stockholders owning 3,137,800 shares or more than 20% of said common stock. Phillips is also the beneficial owner of 1100 shares. Edward R. Downing, who joins in these objections, is the beneficial owner of 2500 shares of said stock.

23. The final Plan approved by the SEC contains some 12 other amendments originally proposed by the common stockholders group, represented by Phillips, but these are not germane here.

Other Phillips proposed amendments to the plan were rejected: a. cumulative voting not to be eliminated from the charter; b. United's charter to be amended so as no longer to permit it to make non-diversified investments and to terminate the closed-end character of its operations; and c. control of the proxy machinery to be taken out of the hands of management for the first organization or annual meeting of stockholders after completion of United's compliance with the Act. On this basis, Phillips, et al., ask this Court to review the entire Plan and the denial of all objections made.

1. The SEC's findings denying a provision to safeguard cumulative voting are challenged as unfair. It is said the SEC erred in applying state law; and the Act and not the Investment Company Act applies to the plan. Phillips-Downing claim the SEC erred in finding choices between diversification and non-diversification and between open-ending and closed-ending were "essentially a matter of business judgment". Finally, Phillips-Downing argue the SEC's failure to free the proxy machinery from control of incumbent management for the first election after compliance is contrary to the Act's standards. In conclusion, the Court is asked to find unfair and inequitable, inconsistent with statutory standards, and unsupported by evidence, findings of the SEC "denying a safeguard" of voting from elimination of the holders of a 50% plus 1 of the voting stock. The Court is asked to remand the case on this issue to the SEC; the Court should hold SEC erred in holding the issue of diversification v. non-diversification and open-ending v. closed-ending was "essentially a matter of business judgment"; the Court should find the omission of a provision freeing proxy machinery from control of present management in the first election after compliance, is unfair and inequitable. In short, a complete remand is sought.

2. The thesis of Phillips-Downing is because the Supreme Court[24] held the District Court had jurisdiction over the provisions of the plan relating "to the elimination of the option warrants and the amendments to the charter and bylaws" it follows the District Court must have jurisdiction over all amendments to United's charter and by-laws advanced by Phillips, et al. I do not think this is what the Supreme Court said. The only amendments to the charter and by-laws referred to by the Supreme Court[25] are those amendments[26] providing for cumulative voting and an increase in the quorum. Mr. Justice Douglas made it clear under § 11(e) of the Act the only matters properly before a District Court for review and enforcement are those which the SEC determines to place before the District Court.[27] He wrote:[28]

"The Commission may or may not accede to the company's suggestion. Section 11(e) does not make it mandatory for the Commission to do so. It only says that the Commission 'may' do so. That implies the exercise of discretion. The company might request, as here, that only some of the terms and provisions of a plan be submitted to the enforcement proceedings of the Act; or it might ask that each and every proposal be so treated. The Commission might refuse the request or it might grant it in whole or in part. The considerations governing the exercise of the Commission's discretion would embrace a variety of factors."

In the instant case the only matters brought by the SEC to this Court are those involving cancellation of the option warrants and changes in United's charter and by-laws permitting cumulative voting and providing for an increase in the quorum. In any event, Phillips' complaints lack merit as to the action taken by the SEC. The Act authorizes

24. General Protective Committee v. S. E. C., 346 U.S. 521, 74 S.Ct. 261, 266, 98 L. Ed. 261.

25. Id., 346 U.S. at page 529, 74 S.Ct. 261.

26. Id., 346 U.S. at page 524, 74 S.Ct. 261.

27. Id., 346 U.S. at page 533, 74 S.Ct. 261.

28. Id., 346 U.S. at pages 532–533, 74 S.Ct. at page 268.

the SEC to accord management latitude in selecting from available methods of compliance the one considered most appropriate.[29]

3. It would appear there is no objection to the proposed amendment of the by-laws so as to provide a quorum requirement from 25 to 50%. The other amendment which seeks Court enforcement provides for cumulative voting for directors. No one has objected to this amendment except, as stated, Phillips-Downing object that the amendment does not include the prohibition against elimination of cumulative voting without consent of 2/3 of the United common stock. In addition, there are the other objections noted, supra.

4. Objections relating to open-ending and to procedures for first stockholders' meeting would appear barred by the law of the case and res judicata. In any event, the SEC's findings and conclusions are supported by substantial evidence and were arrived at in accordance with law. All Phillips-Downing objections were previously presented to the Court of Appeals in three briefs. All their basic contentions were considered and overruled by the Court of Appeals for the District of Columbia. The Supreme Court held the Court of Appeals had jurisdiction to review these objections, but not those provisions which the SEC had made operative, at the request of United, upon enforcement in the District Court; i. e., the Court of Appeals had no jurisdiction of "those [issues] pertaining to the elimination of the option warrants and the amendments to the charter and bylaws." [30] ; or, more specifically, "Amendments to the charter and by-laws of United (without a vote of stockholders) to provide for cumulative voting in the election of directors and a 50 percent quorum at stockholders meet-

ings." [31] But note: the Supreme Court did not say all Phillips' proposed amendments to the charter and by-laws were beyond the jurisdiction of the Court of Appeals. In short, the Court of Appeals was reversed in a limited respect, i. e., "We reverse the Court of Appeals in taking jurisdiction over the provisions of the voluntary plan of reorganization which the Commission in its order made operative on enforcement by the District Court." [32] The amended mandate of the Court of Appeals was likewise intended to dismiss for lack of jurisdiction, only those objections to the particular provisions of the Plan which the Commission had made operative on District Court enforcement. Again, the Supreme Court said: "We have concluded * * that the Court of Appeals had jurisdiction under § 24(a) to review all questions tendered it, except those pertaining to the elimination of the option warrants and the amendments to the charter and bylaws." [33]

Thus, the Court of Appeals upheld the SEC's order as fair and equitable and necessary to effectuate the provisions which are not operative until brought to the District Court. This includes the provisions once again under attack by Phillips-Downing in the present proceeding before me. In any event, I conclude the rulings of the Court of Appeals on the Phillips-Downing objections concerning open-ending and procedure at stockholders' meetings are manifestly correct. Likewise, its rulings concerning the proxy machinery in the first election of directors. Lastly, the SEC dealt with Phillips-Downing contentions that representatives of their group should be placed upon the board of United as well as with the contention the charter should be amended to give minority stockholders special rights. Again in any event, under the approved provision for cumu-

29. Commonwealth & Southern Corp. v. S. E. C., 3 Cir., 134 F.2d 747, 751; Lahti v. New England Power Association, 1 Cir., 160 F.2d 845.

50. 346 U.S. at page 529, 74 S.Ct. at page 266, 98 L.Ed. 261.

31. Id., 346 U.S. at page 524, 74 S.Ct. at page 263.

32. Id., 346 U.S. at page 536, 74 S.Ct. at page 270.

33. Id., 346 U.S. at page 529, 74 S.Ct. at page 266.

lative voting contained in the Plan, the Phillips-Downing group, if representing 20% of United stock, for which they speak, may seek representation on United's board under present and orthodox procedures.

5. The proposed amendment of United's charter with respect to cumulative voting is fair and equitable. The Court of Appeals upheld the ruling of the SEC on this and without the Phillips requirement cumulative voting cannot be changed except with the consent of 2/3 of the United stock.[34] On this point, however, the decision of the Court of Appeals is not the law of the case, since this issue was beyond its jurisdiction as interpreted by the Supreme Court. But, this ruling on the merits is, I think, correct since the SEC's decision is supported by evidence and law. Correctly, too, I think the SEC has determined not to interfere with the right of stockholders of United, if action is taken under Delaware law, the Investment Company Act and the proxy requirements of the Securities Exchange Act, to alter cumulative voting provision by vote of the majority of all stock. This determination by the SEC was made after complete consideration of all evidence and is consistent with law; and it represents a proper exercise of the discretion of the SEC.

■ In conclusion on this phase of the instant case, the provisions of the Plan relating to the proposed amendments of United's charter and by-laws are fair and equitable and necessary to effectuate the provisions of § 11 of the Act. The SEC's findings and conclusions rejecting or not adopting the Phillips proposals are supported by substantial evidence and were arrived at in accordance with law.

*Remaining Phases of The Plan Before The Court For Enforcement*

■■ The precise application of the SEC before this Court seeks approval of the cancellation of the outstanding warrants and proposed changes to the charter and by-laws. The proposed cancellation of the warrants is appropriate to effectuate the provisions of § 11 of the Act. On other occasions I have upheld the conclusions of the Commission that option warrants without investment value constitute an unnecessary complexity in the corporate charter of a registered holding company or subsidiary and a plan of cancellation is appropriate under § 11(b). In re United Gas Corp.,[35] I said:

"The cancellation of all outstanding option warrants without compensation is bottomed on a realistic evaluation of the worth of such paper, originally issued as a form of 'bonus' in connection with the sale of other securities of United [Gas Corporation]. * * * It would obviously be unfair to hold out to investors the hope that at some remote time the option warrants will have value. While there might be situations where holders of option warrants should be permitted to participate in a plan under the United Light & Power doctrine, this is not the case."

The Supreme Court upheld this interpretation of § 11(b) in Niagara Hudson

34. 92 U.S.App.D.C. 172, 203 F.2d at page 623.

35. In re United Gas Corporation, D.C.Del., 58 F.Supp. 501, 519, affirmed on appeal raising other issues, 3 Cir., 162 F.2d 409.

There appears to have been two cases holding cancellation of option warrants having an investment value, in exchange for new securities in the reorganized company, appropriate to effectuate the provisions of § 11(b) of the Act. Community Gas and Power Company, 22 S.E.C. 115, 142-3 (1946), enforced In re Community Gas and Power Co., D.C.Del., 71 F.Supp. 171, affirmed 3 Cir., 168 F.2d 740, certiorari denied Caplan v. Securities & Exchange Commission, 1948, 334 U.S. 846, 68 S.Ct. 1516, 92 L.Ed. 1770; Electric Power & Light Corp., Holding Company Act Release No. 8889 (1949) at pp. 70-74, enforcement order affirmed In re Electric Power & Light Corp., 2 Cir., 176 F.2d 687, 691, stay denied 1949, 337 U.S. 903, 69 S.Ct. 917, 93 L.Ed. 1717.

A similar ruling of this Court in In re Commonwealth & Southern Corp., D.C. Del., 1949, 84 F.Supp. 809, 811, was affirmed by the Court of Appeals and certiorari was denied, supra.

Power Corp. v. Leventritt, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed. 319, reversing Securities and Exchange Commission v. Leventritt, 2 Cir., 179 F.2d 615.

§ 11(b) (2) of the Act does not define with particularity types of securities which constitute undue and unnecessary complexity.[36] The SEC's views demonstrate the warrants, considered either on the basis of option price of $27.50 per share or the reduced price of $19.25 a share, are based upon fictitious asset values, not related to assets and earning capacities of United.

■ The Committee argues provisions of the Act providing for divestment of holdings in public utility subsidiaries have been met with United's compliance and this eliminates jurisdiction of the SEC and the District Court to enforce the warrant cancellation provisions of the Plan, however necessary and fair, when submitted to the SEC. It is argued United, while a "holding company" when the SEC approved the Plan, is no longer such but is a pure investment company and therefore the District Court is without statutory jurisdiction to approve the Plan. The fundamental concept that consummation of some provisions of a plan will destroy both SEC and District Court jurisdiction to see that the balance of the Plan is consummated, can not be supported. For example, by the time the Supreme Court approved cancellation of warrants in the Leventritt case, supra, Niagara Hudson Power had been dissolved, and had distributed all its holdings to subsidiary companies.[37] So, too, in Commonwealth & Southern Corporation, supra, the August 23, 1950, Court of

Appeals opinion for this circuit noted the subject company had been dissolved and its assets distributed on October 14, 1949.[38] The critical jurisdictional fact is United must be regarded as a registered holding company. It is not the order of consummation of steps in its plan to cease to be a holding company which has major significance. Under § 2(a) (12) of the Act, " 'registered holding company' " means a subject company whose registration is in effect under § 5. Such registration remains in effect until the SEC issues an order pursuant to § 5 (d) of the Act, terminating such registration upon such terms and conditions as the Commission finds and in such order prescribes as necessary for the protection of investors.

■■ 6. I think the proposed cancellation of the warrants is fair and equitable to the persons affected by the Plan. The test of fairness in corporate reorganizations is whether each security holder, in order of his priority, receives the equitable equivalent of the rights surrendered. In a § 11(e) reorganization of a solvent corporation, rights surrendered are valued as in a going concern. Investment value is the test, not market value. Otis & Co. v. S. E. C., 323 U.S. 624, 65 S.Ct. 483, 89 L.Ed. 511; S. E. C. v. Central-Illinois Securities Corp., 338 U.S. 96, 69 S.Ct. 1377, 93 L.Ed. 1836; Niagara Hudson Power Corp. v. Leventritt, supra.

A master factor to determine value of rights to be surrendered by holders of option warrants is an analysis of the terms of the warrants. Here, warrant holders are denied any rights as stock-

36. § 1(b) of the Act declared the national interest and the interest of investors in the securities of holding companies and their subsidiaries are adversely affected "when such securities are issued upon the basis of fictitious or unsound asset values having no fair relation to the sums invested in or the earning capacity of the properties." Further, § 7 of the Act, which prescribes standards for the issuance of new securities, provides in subsection (d) (1) and (2) no such security may be issued if it

"is not reasonably adapted to the security structure" of the issuer and of the other companies in the system or "is not reasonably adapted to the earning power" of the issuer.

37. Date of consummation of Plan was January 5, 1950. See In re Niagara Hudson Power Corp., D.C.N.D.N.Y., 114 F. Supp. 683; Supreme Court opinion issued January 15, 1951, 340 U.S. 336, 71 S.Ct. 341, 95 L.Ed. 319.

38. 3 Cir., 184 F.2d 81.

holders. For example, without affecting the option price of $27.50 per share, the common stockholders have the right to withdraw all increments in value that might be credited to earned surplus, whether ordinary income or capital gains, in the form of dividends. Increments may remain in the corporation and resultant increase in value per share may be prevented by a declaration of additional common shares in the form of a stock dividend. But, apart from the right of common stockholders to retain increments in value, the record of United's assets and earnings and market prices of its stock, supports the SEC's conclusion there is no reasonable expectation in the foreseeable future United's earnings or assets will be such that market price of its common stock will increase to give warrants a recognizable value. Test of value applied by the S EC—value based on reasonably foreseeable earnings and assets—is the criteria approved by the Supreme Court and by the Court of Appeals for this circuit in Niagara Hudson and Commonwealth & Southern cases, supra.

■ 7. The profert of additional evidence by the Committee, and an independent reconsideration of such evidence, supplies no basis for a remand of the proceedings at bar to the SEC. That United has consummated substantial provisions of the Plan and no longer owns as much as 10% of the voting stock of any public utility company, is irrelevant. Evidence proffered by the Committee to show changes in assets and earnings of other investment companies would merely present, at this time, unpersuasive tabulations and computations originally supplied for the record before the SEC. This profert of proof was fully considered by the SEC and it was disposed of in its memorandum opinion and order of August 17, 1954. Increases subsequent to 1949 do not support—any more than do increases during the period 1937–49—a reasonable expectation market price of United's common will increase sufficiently to exceed exercise price of the warrants. More than that, it ig-

nores basic differences among companies in terms of their investment policy, dividend policy, and leverage in capital structures. In sum, the remainder of the profert consists, at bottom, of matters of opinion and are clearly cumulative in relation to the opinion evidence which was already in the record before the SEC. The SEC's findings and conclusions, upon the terms of the Plan, providing cancellation of option warrants, and upon the SEC's rejection of the Committee's motion to re-open the record, are supported by substantial evidence and were arrived at in accordance with law.

The terms of the Plan submitted for enforcement should be approved in the form of an order in conformity with the views expressed herein, containing a provision the motion for the taking of additional evidence is denied, and a refusal to remand the case to the Securities and Exchange Commission.